NATHAN, *alias* ARP, *v.* THE STATE.

</div>

1. The phase of involuntary manslaughter in the commission of a lawful act without due caution and circumspection was presented by the statement of the accused, when considered in connection with the surroundings of the homicide.

2. The instructions as to the implication of malice arising from proof of a homicide when there is a deliberate intention unlawfully to take human life, and that malice may sometimes be implied even in the absence of satisfactory proof of motive for the homicide, were not open to the criticisms made thereon.

3. Though a party may, under the Civil Code, § 5290, impeach his own witness, if he can show to the court that he has been entrapped by the witness by a previous contradictory statement, the rule does not apply where the testimony of the witness is not prejudicial to the party calling him. *Rickerson* v. *State,* 106 *Ga.* 391 (33 S. E. 639); 7 Enc. Ev. 31 (b), and cases cited.

4. The verdict was very strongly supported by the evidence, and the court did not err in refusing the grant of a new trial.

<div align="center">

Submitted June 15,—Decided July 15, 1908.

</div>

Indictment for murder.    Before Judge Lewis.    Morgan superior court.    April 23, 1908.

The accused was convicted of murder, for the killing of a woman,

Sweetie Harris. His motion for a new trial being overruled, he excepted. According to the testimony submitted in behalf of the State, the accused, who was a mere acquaintance of the deceased, was standing very near her while she was dancing with another. Cursing her, he said: "I told you not to dance. I told you I would shoot you," and immediately shot and killed her with a pistol. He at once fled, and, some four years thereafter, was arrested in another county, going under an assumed name. Defendant's statement to the jury was as follows: "I didn't have my pistol at all, and I said, 'John, loan me your gun,' and he said 'I am not going to loan it to you,' and I said, 'I am not going to do anything to you,'—and I unbreeched it and went to fix it back and it went off and shot her. And when I shot her I went out of the house and never said anything at all when the pistol went off, and did not say anything at all when I shot her. I shot her accidentally, I did not intend to shoot her at all." Defendant introduced witnesses who testified that they were familiar with the kind of pistol with which the deceased was shot by the accused, and that pistols of this make were liable to fire from being breeched or unbreeched. The accused introduced one Gable as a witness, who testified that he was standing near the accused when the pistol fired; that he knew nothing about the shooting, as it was done so quickly; that he did not know who owned the pistol that was fired; that he was not looking at the accused when the pistol was fired, and did not know in what position it was held; that deceased was dancing when she was shot; that a good many people were present; that the accused was not paying the deceased any special attention, so far as the witness knew; and that he knew of no quarrel or unpleasantness between them before the shooting. Counsel for the accused stated to the court that they had been entrapped by this witness, and requested the court to permit them, for the purpose of laying the foundation for his impeachment by proof of contradictory statements, to ask the witness if he did not state to them, in their office, on the day before the trial, that the shooting occurred just as the accused, in his statement, said it did, that is, that it was a pure accident, in that the pistol fired while the accused was unbreeching or breeching it. The court declined to permit the question to be asked.

The grounds of the original motion for a new trial were the

general ones, that the verdict was contrary to the evidence, contrary to law, and without evidence to support it. The first ground of the amended motion was, that the court erred in charging: "You are to grade this homicide, if a homicide was committed, by saying by your verdict what it is, whether it was murder or some other grade of homicide. Whether it was murder or involuntary manslaughter in the commission of a lawful act without due caution and circumspection, or an accidental killing." The fifth ground was, that the court erred in giving the following charge: "If you should conclude from the evidence in the case that the defendant had a pistol in his hands, and, without any intention to kill the deceased or any one else, was attempting to breech or unbreech the pistol, but doing so in a careless and reckless way, that is, without due caution and circumspection, such a way as might probably produce death, and did result in the death of deceased, he would be guilty of involuntary manslaughter in the commission of a lawful act without due caution and circumspection." The exceptions to these charges were, that they were not authorized by the evidence or the statement of the accused, and that they were misleading and hurtful to the accused.

The second ground of the amended motion was, that the court erred in charging as follows: "Wherever a person kills another, and where the circumstances of the killing show that he did it with the intention to kill, that intent itself is express malice, provided it is a deliberate intention to unlawfully take human life." The assignment of error was, that this charge was erroneous, in "that the court failed to further explain to the jury that a killing might take place with intent to kill, and yet not be murder under the law."

The third ground assigned error on this charge: "So where a person kills another with a deliberate intention, in the sense I have mentioned, to take human life, to unlawfully take human life, express malice existing, the party taking human life would be guilty of murder." The error assigned was, that this "was an expression of the court as to the grade of homicide, and misled the jury."

The fourth ground complained of error in this charge: "Malice is implied sometimes even in the absence of satisfactory proof of motive of the killing. Should you conclude from the evidence in

this case that the defendant shot and killed the deceased with malice, as I have defined that term, he would be guilty of murder under the law, and you should so find him guilty by your verdict." The error assigned was, that this charge "did not explain to the jury under what circumstances malice would be implied."

The sixth ground complained of the following charge: "If, however, you conclude from the evidence in the case that the defendant shot the deceased with the intention to kill her, and did so with malice, he is guilty of murder under the law, and you should so find him by your verdict. If you are satisfied to a reasonable and moral certainty that this defendant is guilty, it is your duty to find him guilty." The exception was, "that this repeated expression of the court amounted to a direction to the jury and an intimation as to the opinion of the court as to the defendant's guilt, and what should be the verdict of the jury." It appears from the charge in the record that this instruction immediately followed that in reference to involuntary manslaughter, set out in the fifth ground of the amended motion.

The remaining ground of this motion assigned error upon the refusal of the court to permit counsel for the accused to examine the witness Gable for the purpose of laying the foundation for impeaching him by proof of contradictory statements.

*M. C. Few* and *M. N. Carpenter,* for plaintiff in error.

*John C. Hart, attorney-general,* and *Joseph E. Pottle, solicitor-general,* contra.

FISH, C. J. (After stating the facts.) The charges on the subject of malice, upon which error was assigned, were given while the court was instructing the jury on that subject and explaining to them the difference between express malice and implied malice. The headnotes, when considered in connection with the preceding statement of facts, need no elaboration.

*Judgment affirmed.   All the Justices concur.*