## 1160.   LUKE *v.* CANNON.

1. Unless a witness has deceived and entrapped the party introducing him, such party will not be permitted to discredit or impeach him by proof of alleged former contradictory statements not made to the party, but to others. For one to impeach his own witness, voluntarily called by him, it must appear that the previous contradictory statements relied upon for purposes of impeachment were unknown to him, and that he was deceived and entrapped, and thus unwittingly damaged, by statements different from what he expected. It must also appear that the party claiming to have been entrapped, or his counsel, ascertained from the witness himself, and not from hearsay, the testimony which it was expected would be given when the witness was placed upon the stand.
2. Declarations of a defendant in fi. fa. in a claim case, as to his title, made after levy, are inadmissible for any purpose.
3. A witness can not be impeached by proof of contradictory statements, until his attention has been directed to the time, as well as the place, at which the alleged previous contradictory statements are alleged to have been made. The foundation for impeachment by means of previous contradictory statements is not properly laid by asking the witness as to making such previous contradictory statements to a person different from the one to whom the party attempts to show by the impeaching testimony the contradictory statement was made.
4. The evidence of previous contradictory statements related to have been made by a witness sought to be impeached is not affirmative proof of the truth of such previous statements.

Claim, from city court of Cairo—Judge Singletary.   March 16, 1908.

Submitted July 2,—Decided July 25, 1908.

*W. C. Snodgrass,* for plaintiff in error.

*Ledford & Terrell,* contra.

RUSSELL, J.   The sheriff of Grady county levied an execution, issued in pursuance of the foreclosure of a laborer's lien in favor of Joe Cannon, upon certain personal property, as the property

of W. S. Sherrod; and a claim to a portion of this property was interposed by Roscoe Luke. Upon the trial of the claim in the city court of Cairo (the judge acting both as judge and jury) the property claimed was found subject to the fi. fa.; and the claimant excepts to this judgment. He excepts also to certain rulings upon objections to testimony; and these exceptions are preserved by reason of the fact that the bill of exceptions containing these special assignments of error was certified within thirty days after the rulings complained of.

Upon the trial of the case the claimant testified, that certain lumber levied upon on the right of way of the Atlantic Coast Line Railroad Company near Pine Park, and about 8,000 feet of lumber of W. S. Sherrod near Pine Park, which had been levied upon, belonged to him; that he had paid for it and it had actually been delivered to him sometime prior to the levy of the laborer's lien. In accordance with the act of 1905 (Acts of 1905, p. 84), the judge certified to certain additional evidence to that related in the original bill of exceptions, as follows: "The lumber covered by my claim belongs to me, because I paid for sawing it, and it had actually been delivered to me, and was so delivered before I finished paying for it. In some instances I paid direct to the hands for the labor at Mr. Sherrod's mill, by paying drafts drawn on me, payable to the hands. The lumber was delivered to me by Mr. Sherrod's statement prior to my paying him anything. At that time the lumber was on the right of way of the Atlantic Coast Line Railroad at Pine Park, with the exception of one car of about 8,000 feet, more or less, of 1x9, 9'-3" long. This, Mr. Sherrod represented to me, was cut and either stacked or piled at his mill. The car I paid Mr. Sherrod for was this particular lumber. I had nothing to do with the operation of the said sawmill. I had nothing to do with the employment of the hands. In some instances I paid them direct because Mr. Sherrod drew on me in their favor. I do not think that this was for cutting this particular timber. I rather think it was not. It was not on cars at time of levy. Mr. Sherrod was to load the lumber on the cars at Pine Park, Ga. There was no count of the lumber before the levy, only by Mr. Sherrod. I don't know exactly what it measured up, but, by checking furnished me by the parties who load it on cars for Mr. Sherrod, it was about 40,000 feet. The count made by Mr.

Sherrod was to be verified by my count in shipping. Mr. Sherrod guaranteed the count. The lumber was not to be delivered before it was paid for, but it was to be cut before it was paid for, and it was cut before I paid him the money."

At the conclusion of the claimant's testimony, the plaintiff in fi. fa. introduced, as a witness, Sherrod, the defendant in fi. fa. Though introduced in behalf of the plaintiff, Sherrod sustained the contention of the claimant, by testifying that the lumber in controversy had been paid for by Luke prior to the time of the levy, and the lumber itself delivered to Luke in consideration thereof. Thereupon counsel for the plaintiff in fi. fa. stated to the court, that he had been misled and entrapped by the witness, Sherrod, that the testimony of this witness was a surprise to him and contradictory to statements made to persons other than the plaintiff in fi. fa. or his counsel, and that these contradictory statements had been communicated to counsel for the plaintiff in fi. fa., and that he desired to introduce new testimony to impeach and contradict the testimony of Sherrod. It does not appear from the original bill of exceptions that any foundation for the impeachment of this witness was laid, but it is certified, in the supplement to the bill of exceptions, that counsel for the plaintiff in fi. fa. asked Sherrod the following question: "Did you not, in the same room where this trial is being held, tell me that the lumber was not to be Luke's lumber at all, but to be shipped to parties in Chicago, on orders given by them, and did you not show me said orders and state to me, 'I guess this will show where it was to go;' and did you not make similar statements to D. R. Collins and T. D. Gwaltney?" To which the witness answered, "I do not recollect." Whereupon the attorney for the plaintiff in fi. fa. stated in his place that he had been entrapped by the witness, Sherrod, by statements of the witness, previously made to him and to others, to the effect that the lumber was not to be Luke's, but only the proceeds of the sale were to be his. Three witnesses were then introduced, who testified, that they had conversations with the witness Sherrod, concerning the title of the lumber levied upon, and that the conversations were after institution of the proceedings, and after the levy. To the testimony of each of these witnesses counsel for the claimant objected, upon the ground that the conversations with Sherrod were subsequent to the pendency of the

proceedings or litigation involved; also because Sherrod was a witness for the plaintiff in fi. fa.; and also because the statement of counsel, as to his being entrapped, did not show a legal entrapment; and further, that no sufficient ground was laid for the impeachment of Sherrod. These objections were all overruled by the court.

Counsel for the claimant also moved to exclude the testimony of Collins and Gwaltney, after it had been delivered; because the statements related, as having been made by Sherrod to the witnesses, were made subsequently to the levy. The court overruled the motion to exclude this testimony, holding, that it was admissible for the purpose of affecting the credibility of the witness sought to be impeached, in reference to his statement in regard to delivering lumber to Luke, but that any statement made by the witness Sherrod, the defendant in fi. fa., after the levy, would be inadmissible.

1. We think that the objections urged by counsel for the plaintiff in error, to the introduction of testimony in relation to contradictory statements alleged to have been made by the witness Sherrod, should have been sustained, and that the court erred in not withdrawing this testimony, upon motion, after it was introduced. Section 5290 of the Civil Code declares that "a party may not impeach a witness voluntarily called by him, except where he can show the court that he has been entrapped by the witness by a previous contradictory statement." It must appear that the party or his counsel had been informed directly from the witness, either by hearing him speak or swear or by reading a written report of his previous statement upon the same subject. It has never been ruled, so far as we are aware, that counsel can introduce a witness and vouch for his veracity, and then claim to have been entrapped, upon the ground that he relied upon statements made by the witness to others, not parties to the cause, which were repeated by said third parties to himself or his client, and that, relying upon this second-hand information, he introduced the witness without being apprised of what he would really testify. One who claims to have been entrapped by a witness, voluntarily introduced by him, must not only show that he expected the testimony of the witness to be different, but that he is surprised that the testimony adduced is different from the substance of the statement

made by the witness, prior to the trial, to himself or his client. Counsel in this case stated that he was surprised, and in his statement covered one point in the case, so far as the contradictory statement to himself was concerned, by calling the attention of the witness, sought to be impeached, to the place where the alleged contradictory statement was said to have been made; but the attention of the witness was not called to the time; and the provision of the code, upon this subject, is that the attention of the witness sought to be impeached must be called, as near as possible, to the time, place, and other surrounding circumstances. As to the other witnesses, with reference to whom the defendant in fi. fa. was interrogated, the attention of the witnesses was not called to either time, place, or any circumstance which would enable them to refresh their recollection. They were merely asked if they did not have a conversation with certain named witnesses upon a given point. The attention of the witnesses was not called to the alleged previous conversation with the witness Kent at all in any way. The law is so particular in its requirements of caution upon the part of one who introduces a witness to the court, and thereby vouches for his veracity, that a strict showing is required before one will be allowed to repudiate a witness, voluntarily called by him, by attempting to impeach him. It is well settled, of course, that one may contradict his own witness by showing the truth to be different from what the particular witness testified. *Cronan* v. *Roberts,* 65 *Ga.* 678 (2); *Christian* v. *Railway Company,* 120 *Ga.* 317 (47 S. E. 923); *Moultrie Repair Co.* v. *Hill,* 120 *Ga.* 732 (48 S. E. 143); *McElmurray* v. *Turner,* 86 *Ga.* 217 (12 S. E. 359). But "a party shall not be permitted to discredit his own witness, unless he first shows to the court that he has been entrapped by previous contradictory statements made by the witness. It is not sufficient that he shall have made contradictory statements; such statements must have deceived, and led the party complaining to introduce him, and thus, unwittingly, to have been damaged by statements different from what he expected. Under such circumstances, the law permits a party to violate that statutory rule which assumes that one who brings a witness before a court has, at least, confidence in his truthfulness." *McDaniel* v. *State,* 53 *Ga.* 254. In that case the Supreme Court remarked upon the fact that the solicitor-general had not stated that he put up the witness by virtue

of any false impression. This statement is always necessary where one claims to have been entrapped; because it is conceivable that counsel or a party might talk in advance with a witness and receive statements from him favorable to their contention, and yet be so well aware of his unreliability as to be thoroughly aware of the uncertainty of what he might testify when put upon the stand. "Unless a witness has deceived and entrapped the party introducing him, such party can not impeach his credit by evidence of his previous declarations at variance with his sworn testimony." *Dixon* v. *State,* 86 *Ga.* 754 (13 S. E. 87). In *Marsh* v. *South Carolina R. Co.,* 56 *Ga.* 277, the court held that it was not a case of surprise. "The plaintiff's counsel did not profess to be surprised by his having testified differently from *the expectations* which he had raised by his previous statements. Greenleaf's Ev. §442."

2. Declarations of a defendant in fi. fa. in a claim case, as to his title, made after levy, are inadmissible for any purpose. The defendant in error insists, however, in his brief, that though such statements are generally inadmissible, they may be used for the purpose of impeachment; and in his supplemental certificate the trial judge stated that he ruled that these declarations could not be used for any other purpose. Only contradictory statements as to material matters can be used for the purpose of impeachment; and by "material matters" are meant matters competent to prove one side or other of the issue, and admissible for that purpose. If the testimony of the defendant in fi. fa., as to the title of the property levied upon and which has been claimed by another, are inadmissible, they become immaterial; and if immaterial and inadmissible, it would not matter that previous statements upon the same subject were contradictory to those made upon the stand. The court should, therefore, have sustained the objection of counsel for plaintiff in error upon this subject, and excluded the testimony.

3. The principle announced in the third headnote is laid down in §5292 of the Civil Code, and needs no elaboration, except with reference to the latter portion of this headnote. It appears from the question asked the witness Sherrod, when the ground for impeachment was being laid, that he was not asked anything with reference to the conversations with the witness Kent, the witness Gwaltney, and the witness Collins; he was asked if he did not make

certain statements to counsel for the plaintiff in fi. fa. and similar statements to Gwaltney and Collins, but neither the time nor the place, nor the surrounding circumstances of the conversation inquired about, with Gwaltney and Collins, were suggested to the witness, so as to give him an opportunity of refreshing his recollection. So far as laying the foundation is concerned, he was not informed, by the previous question with reference to the conversation with counsel for the plaintiff in fi. fa., as to *when* this conversation occurred. So far as any previous statements to the counsel are concerned, the impeachment was not complete, because no statement or testimony on the part of the attorney appears in the record, detailing what statements, if any, the witness sought to be impeached had previously made to him.

4. Even if it be conceded that a proper showing was made that the plaintiff in fi. fa. and his counsel had been entrapped by a witness upon whose statements and veracity they relied, and that thereafter the witness by whom they were deceived was successfully impeached, still we are constrained to sustain the plaintiff in error's exception to the final judgment in the case. We are compelled to hold that, under the unimpeached evidence, the claim should have been upheld and the property found not subject. If all the evidence be excluded by impeachment, except that of the claimant himself (and this must be done, if the impeaching testimony was believed), then the claimant established his title to the property. Delivery may be constructive as well as actual, and the facts testified to by him, though some of the testimony might have been objected to, clearly established the fact that he paid for the lumber prior to the foreclosure of the laborer's lien and its levy.

It is insisted, in the brief of the learned counsel for the defendant in error, that the claimant admitted a prima facie case by admitting the property to be in the possession of the defendant at the time of the levy. This may be true as a matter of fact, but it does not appear in the record that the claimant made any admission. The original bill of exceptions simply purports to give such testimony as the plaintiff in error deemed material to a clear understanding of the errors complained of. Under the rule this is all that is required, and this court can not presume that there was other evidence or that there was not other evidence. There is no

presumption either way, further than that the plaintiff in error has embodied in his bill of exceptions all he desires considered by the reviewing court. Nor does the supplemental record, certified by the ·trial judge, contain any statement that the claimant admitted a prima facie case, or negative the idea that the plaintiff in fi. fa. was required to prove that the property was in the possession of the defendant at the time of the levy. The entries of levy which appear in the record, so far from stating that the property levied upon was in the possession of the defendant in fi. fa., state that it was on the right of way of the railway company. The giving of bond by the claimant admits nothing more than that the property has been levied upon.

On the trial now under review, we think that the evidence, the testimony of Luke not being contradicted, demanded a finding in favor of the claimant; and consequently the judgment finding the property subject was erroneous.  *Judgment reversed.*