### 30386. ALLEN v. THE STATE.

MACINTYRE, J. 1. "A party voluntarily introducing a witness can not impeach him, except where the party 'can show to the court that he has been entrapped by the witness by a previous contradictory statement' [Code, § 38-1801]; and he can not impeach the witness by proof of such a statement even where he claims to have been surprised and entrapped, unless the statement was made directly to himself or his attorney (*Carter* v. *State*, 17 *Ga. App.* 244, 86 S. E. 413; *Luke* v. *Cannon*, 4 *Ga. App.* 538, 62 S. E. 110), or was made to some third person with instruction to communicate it or for the purpose of being communicated to the party or his counsel, and this was in fact done and the party acted thereon. *Jeens* v. *Wrightsville & Tennille R. Co.*, 144 *Ga.* 48, 51 (85 S. E. 1055)." *Burns* v. *State*, 20 *Ga. App.* 77, 79 (92 S. E. 548); *Riggins* v. *State*, 67 *Ga. App.* 309 (20 S. E. 2d, 95). Where the evidence showed that when the State's witness testified that the previous contradictory statements in question were sworn to in writing "when the State was asking me [the witness] these questions and taking my statement," and that such previous statements were made for the purpose of being communicated to the State's counsel or his assistant, and that this was in fact done, and that the assistant solicitor-general acted thereon, the court did not err in allowing the assistant solicitor-general to cross-examine the State's witness.

2. There was no error in the rulings on the admission or the exclusion of evidence. The evidence authorized a finding that the wounds inflicted on the deceased by the defendant caused his death; and the verdict finding the defendant guilty of voluntary manslaughter was authorized. No sufficient reason has been shown for a reversal.

*Judgment affirmed.* *Broyles, C. J., and Gardner, J., concur.*

DECIDED APRIL 27, 1944. REHEARING DENIED JULY 28, 1944.

*James R. Venable, George T. Manley,* for plaintiff in error.
*John A. Boykin, solicitor-general, E. A. Stephens, Durwood T. Pye,* contra.

#### ON MOTION FOR REHEARING.

MACINTYRE, J. The opinion ruled on all of the grounds of the motion for a new trial, but did not specifically refer to grounds 7 and 11 thereof. Upon a request in a motion for rehearing that we specifically rule upon them, we now do so.

The evidence tended to show that the defendant severely beat the deceased, knocking him down at least twice in the defendant's bedroom on the second floor of a two-story house. "He [the defendant] then dragged him into the hall and left him lying there." The defendant then locked his door, went down stairs, sat on the front porch for a few minutes, and then went back upstairs. There was also testimony by a witness that the defendant told her that he had kicked and stamped the deceased. Other evidence showed that among the bruises found upon the deceased was a broken jaw. The State contended that the deceased died from the severe beating inflicted by the defendant. A witness, Runell Adams, testified in part as follows: Q. "What, if anything—what sound or noises, if any, did you hear coming from upstairs after the defendant went back up there?" A. "It sounded like somebody was just pushing somebody up against the house." Q. "Did you hear any words said?" A. "No, sir." Mr. Venable (defendant's counsel) said: "We want to object to that unless she knows who that somebody was, whether it was the defendant." The court said: "You can cross-examine her as to that." The witness then answered: "After I heard those noises upstairs, I saw the defendant come back down. He came back down and went on out and went down Washington Street. . . I did not see anything that happened upstairs in the room." It seems to us that the witness heard a certain noise, and was giving what in her best judgment the noise sounded like. Suppose the deceased had been shot several times and had died from a pistol-shot wound, and the witness, under similar surroundings and circumstances, had heard a noise which in her best judgment was a pistol shot, would this not have been a circumstance to which the witness could have testified? We think so. And likewise where, as here, the State contended that the cause of death was the severe beating or stamping inflicted by the defendant, we think that the witness could testify that the "noise sounded like somebody was just pushing somebody up against the house." When a witness testifies what he observes, hears, or smells, it is direct evidence, and not conclusions. When the judge replied, "you can cross-examine her as to that," we think he merely meant that if by cross-examination it was shown that this testimony was irrelevant, or for any other reason inadmissible, on proper objection, it would be ruled out.

The particular kind of noise described by the witness related to the issue of the several assaults upon the deceased, including the movement and conduct of the defendant, and when taken in connection with other circumstances, according to the common course of events, tended to establish the truth of the matter in issue, i. e., the assault upon the deceased.

It might be well to bear in mind that the Supreme Court, in the case of *Rivers* v. *State*, 118 *Ga.* 42, 44 (44 S. E. 859), speaking through Justice Lamar, said: "The restrictive rules of evidence are intended to prevent verdicts from being based on surmise; not to exclude facts which, with others, tend to establish the charge." In *Franklin* v. *Mayor &c. of Macon*, 12 *Ga.* 257, 261, the Supreme Court, speaking through Judge Lumpkin, said: "I have long been satisfied that we are too hide-bound and restricted in our practice, with regard to the admissibility of evidence. The books of *Reports* will show that there is no State in the Union, and no country in the world, where there are as many captious objections made to testimony. It is high time that the practice should be discouraged;" and, again speaking for the court in the case of *Keener* v. *State*, 18 *Ga.* 194, 225, he said; "That *all* the circumstances of a transaction may be submitted to the jury, provided they afford any fair presumption or inference as to the matter in issue. This proposition is exceedingly broad, and if carried out in good faith, would produce the most beneficial results." Thus special ground 7 of the motion for a new trial is not meritorious.

Special ground 11 contends that the court erred in failing to charge the following written request: "I further charge you gentlemen, that the law of this State recognizes a common-law marriage provided the parties can legally contract a marriage but do not, but live together in a community and hold themselves out as man and wife, and I further charge you that should a man and woman live together as such, then he would have the right to kill another, attempting to debauch his wife, or were found actually committing adultery with her at the time of the killing." It was not error to refuse to give this request, because it did not state a correct principle of law. Marriage is a civil contract, and therefore an agreement is requisite to all marriages, ceremonial and informal. The request was particularly defective in that it would have instructed the jury that common-law marriages are based

upon a man and a woman living together, whereas every marriage must be based on an agreement that the contracting parties are thenceforward man and wife. "This relation arises out of the voluntary contract of the parties whereby they mutually consent to be thenceforward husband and wife." *Lefkoff* v. *Sicro,* 189 *Ga.* 554 (6 S. E. 2d, 687, 133 A. L. R. 738). In *Peacock* v. *Peacock,* 196 *Ga.* 441, 447 (26 S. E. 2d, 608), it is said: "A mere reading of the evidence demonstrates that at no time did the parties expressly agree that then and there the plaintiff took the defendant as her husband and that he took her as his wife. No ceremonial marriage was claimed." The court, in the *Peacock* case, held that the evidence demanded a finding that the plaintiff had not entered into a common-law marriage de præsenti with the defendant, which is a valid married status in this State, and that there is in this State no common-law marriage de futuro cum copula. Thus there is no merit in special ground 11.

*Rehearing denied. Broyles, C. J., and Gardner, J., concur.*