## 31068.  JENKINS v. THE STATE.

DECIDED MARCH 1, 1946.

*Shelby Myrick, Ernest J. Haar, Donald Fraser,* for plaintiff in error.

*R. L. Dawson, solicitor-general,* contra.

BROYLES, C. J. Richard Jenkins, Ben O'Neal, Frank Dukes, William H. Johnson, and James Rufus Williams were jointly indicted for an assault with intent to murder Ralph Bashlor, by shooting him with a shotgun. Jenkins was tried separately and was convicted of the offense charged, his motion for a new trial was overruled, and that judgment is assigned as error. The record shows that Jenkins and Bashlor are white men, that the codefendants are negroes, that James Rufus Williams was the person who shot Bashlor with a shotgun, and that Richard Jenkins was not present at the scene of the assault when Bashlor was shot.

Special grounds 7, 8, and 9 of the motion for new trial assign as error the ruling of the court in allowing certain named witnesses to state, in the presence of the jury, the contents of a letter written by Ben O'Neal to his wife, which slightly tended to support the State's contention that Jenkins, O'Neal, and the other alleged conspirators had entered into a conspiracy to murder Bashlor. The evidence as to the contents of the letter was objected to on the ground that the letter was written after the alleged conspiracy to murder Bashlor was ended, O'Neal having written the letter after Bashlor had been shot, and after O'Neal had been put in jail; and that, even if such a conspiracy had been shown, the statements in the letter were made by one conspirator against another coconspirator after the conspiracy had ended, and therefore were not admissible against the defendant Jenkins.

It is well-settled law that, after the termination of a conspiracy, the declaration of one of the conspirators is not admissible against another of the conspirators; but, as stated in *Byrd* v. *State, 68 Ga.* 661, the acts and declarations of one accomplice, done and made during the pendency of a common purpose to conceal a crime already perpetrated, are admissible against another accomplice. In *Smith* v. *State, 47 Ga. App.* 797, 803 (171 S. E. 578), this court said: "But it is also true that proof that a crime has been committed does not necessarily prove the end of the conspiracy so as to render acts and declarations of conspirators after that time inadmissible against other conspirators, for the conspiracy may be kept open for various purposes." And such purposes may be for

the securing of the proceeds of the crime, the division of such proceeds, the concealment of evidence tending to incriminate the conspirators, influencing witnesses with respect to their testimony, the fabrication of evidence tending to exculpate the conspirators, the fabrication of a defense, or in any way avoiding prosecution or punishment; and where this is the case, the acts and declarations of one conspirator are admissible against the others, where made while the conspiracy continued, although after the actual commission of the crime. 16 C. J. 661. See, to the same effect, *Thompson* v. *State,* 58. *Ga. App.* 593 (2), 598 (199 S. E. 568) ; *Carter* v. *State,* 106 *Ga.* 372 (32 S. E. 345, 71 Am. St. R. 262) ; *Baker* v. *State,* 17 *Ga. App.* 279 (86 S. E. 530).

The case of *Brandon* v. *State,* 169 *Ga.* 808 (151 S. E. 493), cited and relied on by the State, is distinguished from the instant case by its particular facts. The admission of the evidence was not error.

Some of the special grounds assign as error the admission of testimony by several of the coconspirators, tending to show that they had been hired by the defendant Jenkins to kill Bashlor; the objection being that the evidence was inadmissible until the State had first proved the existence of the alleged conspiracy. It is well settled that in such a case it is within the discretion of the judge to allow the admission of such evidence before the existence of the conspiracy is disclosed, *provided that such existence is afterwards shown during the trial; and it is not alleged in these grounds that this was not done.*

Special grounds 11 and 12 complain of the court's ruling allowing a witness to state to the jury the contents of an alleged written confession signed by O'Neal and incriminating the defendant Jenkins. The grounds allege as follows: O'Neal had been put on the witness stand by the State, and had been instructed by the court that he need not answer any question that would incriminate him. O'Neal then stated that he did not want to answer any questions or to testify in the case because it would tend to incriminate him. The record shows that the solicitor-general then stated to the court that he had been entrapped by the witness, and the court then allowed him to introduce the evidence complained of. The evidence was objected to on the ground that O'Neal had declined to answer any question in reference to the

contents of his written statement because such answers would tend to incriminate him. The record shows that, when O'Neal was sworn as a witness for the State, in answer to questions of the solicitor-general he testified as follows: "I am 32, I was reared in South Carolina. My father was John O'Neal, a farmer. I lived in South Carolina all my days until twelve years ago, farming, when I left there to come to Savannah. I drove a truck, working at the same place with Mr. Richard Jenkins, the Savannah Distributing Co. I knew a man by the name of Frank Dukes; I have been seeing him for a couple of years—he never owed me any money, I had no business dealings with him. I did not see him on or about the first of May this year in the presence of another fellow named Williams, from South Carolina. I don't know a soldier named Johnson. I don't want to testify. I never did bring either of these boys to this county. I did not stop at Mr. Bashlor's place with Williams in the car and call an old colored woman there and ask for Mr. Bashlor, where he was, on the afternoon of May 8th this year. I saw these two boys before I was placed in jail with them, around town on the street. As to whether I went with these boys out to Liberty County on May 8th this year, I don't care to testify to that. As to whether I stopped at Bashlor's, I don't care to testify about that." At this point, the solicitor-general stated to the court that he had been entrapped by the witness; and the court ruled that the solicitor-general could ask O'Neal "about any fact he disclosed to him, if he did disclose anything, outside of the statement." Thereupon the solicitor-general proceeded to cross-examine the witness at length. The record further disclosed that, before O'Neal was put upon the witness stand, the sheriff of Liberty County had testified in the presence of the solicitor-general, in response to a question by that official, that the last time he talked to O'Neal, he had denied the truth of the statements he had made admitting his guilt.

In *Reid* v. *State*, 56 *Ga. App.* 112, 115 (191 S. E. 657), this court said: "If the witness had repudiated the statement before the trial, and this was known to the solicitor, as long as he elected to use him as a witness for the State he had no right to get the statement before the jury in any form." It is true that in that case the solicitor-general did not state that he had been entrapped by the witness, but that variation is immaterial, for in the instant

case it does not appear from the evidence that the solicitor-general had been entrapped by the witness. In *Jeens* v. *Wrightsville R. Co.*, 144 *Ga.* 48, 51 (85 S. E. 1055), the court said that the entrapment statute, being in derogation of the common law, must be construed strictly, and that the statute uses the word "entrapped," and not the word "misled," and that a party may be "misled," but not "entrapped." Furthermore, our entrapment statute (Code, § 38-1801) states that "a party may not impeach a witness voluntarily called by him, except where he can show to the court that he has been entrapped by the witness by a previous contradictory statement." And in *King* v. *State*, 166 *Ga.* 10, 11 (142 S. E. 160), the court states the rule as follows: the solicitor-general must *show* to the court that he has been entrapped. Moreover, regardless of whether he had been entrapped, when O'Neal announced that he desired to avail himself of his constitutional right to decline to testify in the case, it was error to allow the solicitor-general to continue to question him; and the practical admission in evidence, under such circumstances, of the alleged written confession of O'Neal, which directly incriminated the defendant Jenkins, was error requiring a new trial of the case; and it was error to overrule the defendant's motion for a mistrial based upon such illegal admission. This is true, notwithstanding that later on during the trial the solicitor-general withdrew the evidence, and the court instructed the jury not to consider it. The evidence was extremely prejudicial to the present defendant and, despite its withdrawal, had probably so prejudiced the jury against the defendant as to prevent him from having a fair trial by an impartial jury.

The remaining special grounds show no cause for another trial; and the general grounds are not now considered.

*Judgment reversed. MacIntyre and Gardner, JJ., concur.*