21644. WHIPPLER v. THE STATE.

ARGUED MAY 14, 1962—DECIDED JULY 11, 1962—
REHEARING DENIED JULY 23, 1962.

*Ellsworth Hall, III, Fred M. Hasty, Joseph H. Davis,* for plaintiff in error.

*Wm. M. West, Solicitor General, Jack J. Gautier, Assistant Solicitor General, Eugene Cook, Attorney General, Rubye G. Jackson, Assistant Attorney General,* contra.

QUILLIAN, Justice. ■ The verdict was supported by ample evidence. There is no merit in the general grounds of the motion for new trial.

■ The first special ground of the motion for new trial alleges that the court erred in permitting a witness to identify a knife as one owned by the witness, and that he did not consent to the knife being removed from his home by the defendant. The evidence was relevant and material in that it corroborated the defendant's admission that, prior to the homicide, he took the knife from the witness's home, without the latter's knowledge, and used it in slaying the deceased. The ground is without merit, as is special ground 8, which complains of the introduction of the knife into the evidence on the ground that it was not identified as the murder weapon.

■ The second special ground of the motion for new trial excepts to the admission of one Retha King's testimony that, on the night of July 18, 1960, two days subsequent to the homicide and the robbery of the deceased's store, the defendant related to her he had that day spent $400 for whisky and that he

offered her $20 "to go with him." The objection was that it put the defendant's character in issue. The testimony was admissible because the defendant admitted he was without funds on the night he slew the deceased, and hence tended to show his motive in slaying the deceased was robbery. Under previous holdings of this court, evidence material to the issue of the case is not inadmissible because it incidentally puts the defendant's character in issue. *Tiller v. State,* 196 Ga. 508 (3) (26 SE2d 883). See also *Bennefield v. State,* 86 Ga. App. 285, 288 (71 SE2d 760). Moreover, the testimony was not hurtful to the defendant because, in the statement made to the officers, he admitted having spent part of the money taken from the deceased's store on women and whisky.

■ The third special ground of the motion for new trial complains that an officer was permitted to testify as to a statement made to him by the defendant, in which the latter admitted slaying the deceased and robbing his store. The tenth special ground excepts to the admission into evidence of a similar written statement signed by the defendant. Both grounds allege that the statements were not freely and voluntarily given and that admitting the evidence was violative of the defendant's rights guaranteed to him under the Fifth and Fourteenth Amendments to the Constitution of the United States and Art. I, Sec. I, Par. VI of the Constitution of Georgia.

The evidence shows without dispute that, during three days subsequent to his arrest, the defendant was interrogated by the officers who took his statement. The conversations, so far as the record shows, were at reasonable hours and for periods of time ranging from 45 minutes to 2 hours. On one occasion, the defendant was questioned early in the evening, at about 7 o'clock, for some 45 minutes. One officer testified that other officers could have questioned the defendant during the nights while the investigation was being conducted, but that he did not know that to be true. The officers were positive that the defendant was apprized of his right to refuse to make a statement and was informed that if he did make admissions they would be used against him. They also testified that the defendant was advised that he had the right to have his lawyer

present and that one of the officers told him he needed counsel and suggested that he obtain the services of a lawyer. The advice was not accepted, and the defendant did not signify that he desired to have the services of an attorney. The officers testified that the defendant was not mistreated and that the statements made by him were freely and voluntarily given.

We do not think there was infringement upon any constitutional right of the defendant, and grounds 3 and 10 show no error.

■ Special grounds 4 and 6 assign as error the admission into evidence of photographs of a certain cigar box and of the box itself, over the timely objection that the box was not shown to have been taken from the deceased's store on the night of the homicide and robbery. The defendant in his oral and written statement to the officers, and his statement made during the progress of the trial, related that the box was taken from the store on the night of the homicide; that he took the money from the same and threw it in a wooded area at the rear of his premises. There the officers found the box.

Thus, it is obvious that the box was sufficiently identified, especially in view of other testimony that the defendant's fingerprints were lifted from the box.

■ The fifth special ground of the motion for new trial asserts that the trial judge erred in allowing the solicitor general, over the defendant's timely objections, to introduce the State's exhibit No. 11 identified as "the ink fingerprints of the defendant Ernest Whippler, which have been identified by Mr. Ollie Goings as his, Whippler's fingerprints that he took on July 19, 1960, and have further been identified by John Walter as the fingerprints from which he made a comparison with the latent print on the cigar box referred to."

The objection interposed was: "The defendant objects to the admission of that in evidence on the basis that there is no showing whatsoever that same was obtained freely and voluntarily without any hope of reward or fear of punishment reprisal and that without that foundation it couldn't possibly be evidence against him and therefore the defendant objects to the evidence of the card itself showing the prints."

A deputy sheriff testified that when the defendant voluntarily came to the sheriff's office and was placed under arrest, he brought him into a room and told him he wanted to take his fingerprints; that the defendant offered no objection and co-operated in his fingerprints being taken. The officer did not advise the defendant why he wanted the prints, and did not inform him that charges had been lodged against him, if indeed they had been at that time. The record shows that Whippler was aware that the deceased had been slain by him, and that he was being held as a suspect.

While the admissibility of fingerprints as evidence has not previously been before this court, in *Foster v. State*, 213 Ga. 601, 604 (100 SE2d 426), it is held: "The essential element in the provision of the bill of rights against self-incrimination (*Code Ann.* § 2-106) is that no one shall be *compelled* to give evidence tending to incriminate himself. The provision is not applicable where the defendant voluntarily submits himself for the purpose of others identifying him." Further, "this court has repeatedly held that, where the accused after arrest does an act, without objection, which tends to incriminate himself, it is not error to allow testimony respecting the act, nor is evidence of the act violative of any constitutional right of the accused." *Thomas v. State*, 213 Ga. 237, 239 (98 SE2d 548), and cases cited.

The defendant contends that fingerprints can be taken only for the purpose of identifying the prisoner. We think that, where the prisoner makes no objection to his fingerprints being imposed upon a card, they may be used in identifying him as the perpetrator of a particular crime. There is no merit in the fifth ground of the motion.

■ The seventh special ground of the motion for new trial assigns as error the admission into evidence of the State's Exhibit 14, consisting of eight one-dollar bills, numbered R1976523A, Y55825626I, Y86488616I, J73987034A, R28860341A, R28901972A, Y37641023I, L65028117A, and two papers designated as money wrappers designed to contain bills. Mr. Wilkes, a deputy sheriff, testified that these bills and wrappers were found in a search of defendant's automobile, between the springs and upholstery of the vehicle's back seat; that the search took place some six

to seven hours after the defendant was taken into custody; and that the witness made the search upon information of another officer as to the location of the automobile. He did not obtain the defendant's permission to make the search and did not know that any other officer obtained the defendant's permission that his automobile be searched.

The objection to the evidence was: "that there was an illegal search procedure under the laws of the United States and the State of Georgia; further, it has no probative value whatsoever as to any motive in this case in view of the denominations and the amounts of the money and is not illustrative of any motive in view of the way in which they were found and the location they were found and there's been no connection whatsoever in the evidence with the—that this is the same money that came from the store of the deceased, J. C. Chambers."

The witness, Wilkes, testified to the exact description of the dollar bills and money wrappers, and no objection was interposed to his testimony. This is evidence of the very same substance as the papers themselves. It further appears from the record that the only fact the evidence could have possibly tended to prove was that the accused was in possession of money of which the deceased was robbed at the time of the homicide. The defendant in his statement to the jury frankly admitted that he was, subsequently to the slaying and robbing of the deceased, in possession of all the money taken from the deceased's store on the night of the killing. In short, the evidence admitted over objection proved no more, indeed much less, than the defendant admitted in open court to be true.

In *Seymour v. State*, 210 Ga. 21 (2) (77 SE2d 519), it is held: "The second special ground alleges that $35 received by a witness from the sale of a coat purchased by her with money given to her by the accused and which was admitted in evidence was immaterial, irrelevant, not germane, prejudicial, and harmful to the defendant in that it was not the same money alleged to have been taken from the deceased and it was introduced for the purpose of prejudicially inflaming the minds of the jurors. Prior to the introduction of this money, substantially the same evidence in the form of oral testimony of the same wit-

ness as to the money was admitted without objection, and, for this reason, even if such evidence was improper, it would not require a new trial. *Wheeler v. State,* 179 Ga. 287 (175 SE 540); *Moore v. State,* 193 Ga. 877 (20 SE2d 403); *Carrigan v. State,* 206 Ga. 707 (58 SE2d 407). There is no merit in this ground."

█ The ninth special ground of the motion for new trial assigns error on the introduction of certain keys because, as the defendant contends, they were not shown to have any connection with the homicide. The defendant stated that, on the occasion of the homicide, the keys were taken from the deceased's store and thrown by him in the place where they were found by the officers. The keys were admissible as evidence.

█ The eleventh special ground of the motion for new trial complains that the trial judge charged: "If you do not believe the defendant to be guilty of murder as charged, or if there rests upon your mind a reasonable doubt of his guilt of murder, as charged, you should not convict him of murder but you should go further into the case and inquire into a lower grade of homicide, which is voluntary manslaughter."

The charge was correct and accurate, and has been many times approved. It did not intimate that the defendant had committed "a malicious homicide," but on the contrary instructed the jury that malice was not an element of the offense of manslaughter. "It is sufficient if all of the essential qualifications and elements are covered in the charge as a whole." *Williams v. Young,* 105 Ga. App. 391, 398 (124 SE2d 795), and cases cited therein.

█ The twelfth special ground alleges that the court erred in instructing the jury: "In a case where the homicide is admitted by the defendant, but the admission is coupled with a statement to the effect that the same was done under circumstances of justification, or excuse, or mitigation, then the law does not presume such homicide to have been murder under the admission made."

The criticism of the charge is that it is not applicable to the evidence because the defendant at no time admitted killing the deceased. The ground is, of course, submitted in good faith, but, according to the record, is factually incorrect. Walter Wil-

liams testified that the defendant Whippler called him aside shortly after the homicide and told him that he had just heard over the radio that Mr. Chambers had been robbed and killed and that he was the man that did the job. The defendant in his statement to the jury admitted striking the deceased with the bayonet and said he did not know how many times he struck him. There was testimony of other witnesses that the deceased was mortally wounded and died from the injuries inflicted upon him by the defendant.

The ground shows no merit.

■ The thirteenth special ground of the motion for new trial complains that the judge charged the jury: "Gentlemen, I charge you that if a person forms an intent and purpose to go to a place of business of another and commit a robbery, a robbery is the wrongfully, fraudulently and violently taking of money, goods or chattels of another by force, use of an offensive weapon by intimidation or sudden snatching without the consent of the owner, or person in possession or control thereof, with intent to steal the same, and in the pursuance of such intent and purpose to commit a robbery, such person should go to the said place of business of the person where it is contemplated that the robbery would be committed, and if, in perpetrating the robbery or attempting to perpetrate a robbery and in furtherance of such intent and purpose to commit a robbery, should cut and kill the person sought to be robbed as charged in the indictment, he would be guilty of the offense of murder.

"If you find from the evidence that the defendant was attempting to commit a robbery on Mr. Chambers, then Mr. Chambers would have had a right to use any force reasonably necessary to prevent the commission of any such robbery, and if the defendant killed Mr. Chambers solely because of the resistance of Mr. Chambers with any force reasonably necessary to prevent a robbery, which the defendant was attempting to commit upon him, if the defendant was attempting to commit a robbery on Mr. Chambers, then the defendant would be guilty of murder."

The charge was assigned as error because it is not adjusted to the evidence, in that there was no evidence that the accused went into the deceased's store with intent to commit a robbery or that

he actually committed a robbery. It was also alleged that the charge is not a correct abstract statement of the law.

There was evidence furnished by Walter Williams, who testified that the defendant confided to him immediately after the homicide that he (Whippler) was the culprit, and exhibited the loot stolen from the deceased's store. The defendant in a written statement admitted the homicide and robbery, and in detail related how he disposed of the stolen money.

It is axiomatic that the law presumes criminal acts to have been committed with culpable intent.. *Lawrence v. State*, 68 Ga. 289; *Patterson v. State*, 85 Ga. 131, 133 (11 SE 620) ; *Patterson v. State*, 1 Ga. App. 782, 784 (58 SE 284). The possession of the fruits of a robbery, not satisfactorily explained, was evidence that the possessor committed the robbery. *Chubbs v. State*, 204 Ga. 762 (51 SE2d 851).

The argument of defendant's counsel is that the charge was incorrect as an abstract principle of law because it failed to instruct the jury that, in order for the defendant to be convicted of the crime of murder or for the jury to reach the conclusion that he intended to rob the deceased, his guilt of those offenses must be shown beyond a reasonable doubt. The judge had fully informed the jury concerning the subject of reasonable doubt in other parts of his charge.

In *Carr v. State*, 84 Ga. 250 (4) (10 SE 626), it is held: "A correct charge on reasonable doubt as to the whole case and all the evidence is sufficient. It is not incumbent upon the court to carve the case or the evidence into different propositions, and apply the rule of reasonable doubt to one or more of them severally." The rule is a familiar one. See *McDuffie v. State*, 90 Ga. 786 (1) (17 SE 105).

The ground is without merit.

■ The fourteenth ground excepts to a charge of the court that: "I charge you further that the law presumes every intentional homicide to be malicious until the contrary appears from circumstances of alleviation, of justification, or mitigation, or excuse, and the burden is on the slayer, whenever an intentional homicide has been proved, to make out such circumstances to the satisfaction of the jury, unless they appear from the evidence produced against him. If, however, the proof, if there be any,

that shows the homicide itself discloses that the homicide was done without malice, this presumption that the homicide is malicious does not exist, but if the accompanying proof, if there be any, does not disclose that the killing was done without malice, then it is incumbent upon the slayer to show that it was done without malice. I charge you, however, that this presumption which arises against the slayer, where an intentional homicide is shown, does not arise against a defendant unless it be first shown to a moral and reasonable certainty and beyond a reasonable doubt that the defendant is the intentional slayer, unless it appears beyond a reasonable doubt and to a moral and reasonable certainty that this defendant is the intentional slayer, this presumption does not arise in this case and has no application to the case, and you will not consider such rule in passing upon the case.

"In a case where the homicide is admitted by the defendant, but the admission is coupled with a statement to the effect that the same was done under circumstances of justification, or excuse, or mitigation, then the law does not presume such homicide to have been murder the admission made. Malice cannot be presumed from an admission coupled with an exculpatory or mitigating statement. When a killing is proved to be the intentional act of the defendant, the presumption of innocence with which he enters upon the trial is removed from him and the burden is upon him to justify or mitigate the homicide unless the evidence introduced against him shows justification, or mitigation. But as I have charged you heretofore, the evidence of justification or mitigation may be found in the testimony introduced against him. If there be no evidence introduced to show justification or mitigation, and if the evidence introduced shows the homicide committed as charged in the indictment, the burden would then be upon the prisoner to show mitigation or excuse."

The criticism of the charge is that it did not definitely define the burden of proof cast upon the defendant to show circumstances of "alleviation, mitigation, justification or excuse," and placed a heavier burden upon the defendant than does the law, since the law only requires the proof of such circumstances by a preponderance of the evidence.

The charge has many times been approved by this court.

*Chance v. State,* 156 Ga. 428 (2) (119 SE 303), and cases cited therein are a few of those in which the charge has been held a correct statement of the law.

The charge did not place a heavier burden upon the defendant than does the law. In *Bone v. State,* 102 Ga. 387, 393 (30 SE 845), it is stated: "The preponderance of the testimony might or might not show the facts of the alleged alibi to the reasonable satisfaction of the jury. Less than a preponderance might do so; more might not."

The ground also asserted that the language of the charge was confusing and could be construed to require the defendant to carry the burden of proving circumstances of justification or mitigation beyond a reasonable doubt. The charge is explicit and clear, and not subject to this criticism.

*Judgment affirmed. All the Justices concur.*