## 55088. TUZMAN v. THE STATE.

SMITH, Judge.
    Tuzman, a licensed dentist, was convicted on three felony counts of theft by deception in connection with falsification of Medicaid claims. On appeal, he contends that evidence of independent similar crimes was erroneously introduced, that the seizure of records from his files was illegal, that he was prevented from cross examining state witnesses about relevant matters, that a dentist was allowed to testify to opinions outside his field of expertise, that a jury list was improperly drawn, that exculpatory evidence was not disclosed by the court following an in camera inspection of that evidence, that experimental evidence was erroneously admitted, and that the charge to the jury failed to include instructions on how to handle the evidence of independent similar crimes. We find no reversible error and affirm.
    After extensive investigation by the state and appointment of a special prosecutor, the appellant was indicted on 41 separate counts of theft by deception. Basically, he was charged with having submitted to the State of Georgia claims for work allegedly performed on

Medicaid recipients, which work was never performed. Numerous motions were presented to the trial court, and extensive hearings were held thereon. The court granted a plea in bar as to 30 of the counts on the grounds that those counts involved less than $100 and were therefore misdemeanors barred by the statute of limitation. (The state appealed that judgment in *State v. Tuzman,* 145 Ga. App. 481 (1978)). Evidence relating to these barred counts was introduced at trial for the purpose of showing the appellant's motive, scheme, and intent. Also introduced over objection was evidence seized, pursuant to a search warrant, from the appellant's files. A pre-trial motion to suppress this evidence had been denied. A lengthy and complex trial was had on the remaining eleven counts (the trial lasted two weeks; the transcript contains well over 2,000 pages; and there are more than 100 documentary exhibits) and the jury found the appellant guilty on three of the eleven counts. On each of the three counts, the appellant was fined $2,000 and placed on five years' concurrent probation. This appeal followed.

1. During the trial, the state introduced evidence concerning the 30 misdemeanor counts barred by the statute of limitation. This evidence was admitted, over objection, because the state was using it as proof of the appellant's alleged guilty knowledge, scheme, motive, and intent. The appellant contends this evidence was inadmissible because it (a) denied him his constitutional guarantees to a fair and impartial trial; and (b) failed to make out proof of the commission of an independent crime.

A. Fair Trial. Objections to evidence such as that here are typically based on Code § 38-202, which declares to be irrelevant evidence of conduct in other transactions and evidence of general character. It has long been held that where evidence is introduced for some relevant purpose, such as to show motive, or intent, the fact that it incidentally places character in issue will not render it inadmissible. E.g., *Jackson v. State,* 76 Ga. 551(8) (1886); *Tiller v. State,* 196 Ga. 508 (3) (26 SE2d 883) (1943). However, the Supreme Court (*Payne v. State,* 233 Ga. 294 (210 SE2d 775) (1974)) and this court (*Carroll v. State,* 143 Ga. App. 796 (240 SE2d 197) (1977)), recognizing the

prejudicial impact of placing the defendant's character in issue, have applied a balancing test which will not allow the admission of evidence of independent crimes "unless its relevance to the issues at trial outweighs its prejudicial impact." *Payne,* supra, p. 312. We have recently applied this test in *Parker v. State,* 145 Ga. App. 205 (1978); *Clark v. State,* 144 Ga. App. 650 (1978); *Carroll v. State,* supra; and *Hanson v. State,* 143 Ga. App. 200 (237 SE2d 699) (1977). We believe that the balancing test takes into account on one hand the state's legitimate need to prove—and difficulty in proving—the defendant's intangible intent, motive, and state of mind, and on the other hand the defendant's right to a trial free from undue prejudice or bias. Thus, we believe the balancing test answers the appellant's constitutional objections, for, so long as the admitted evidence was more relevant to a disputed issue than it was prejudicial, it did not destroy the fairness of the trial. We so conclude here: the evidence was relevant to prove guilty knowledge and intent, and the intent element was the essence of the appellant's defense. In contrast, the evidence was not overly prejudicial here, as the jury was cautiously instructed that the appellant was on trial only for the eleven felony charges. In specific answer to the appellant's contentions, we do not agree that the introduction of this evidence of very similar independent acts denied the appellant's constitutional rights to a fair and impartial trial and jury, to equal protection, not to be placed twice in jeopardy for one offense, to have his guilt proved by the state, and to defend his cause before the courts.

B. Proof of Independent Crime. There is no merit in the appellant's contention that this evidence was inadmissible because it failed to prove all the elements of *commission* of any independent crimes. The cases cited by the appellant, *French v. State,* 237 Ga. 620 (229 SE2d 410) (1976) and *Howard v. State,* 211 Ga. 186 (84 SE2d 455) (1954), stand only for the propositions (1) that the independent acts must be logically similar to the current charge and (2) that it must be proved that the *defendant on trial committed those acts.* Whereas proof of the various elements of the separate crime is *helpful* toward establishing a logical nexus between that crime and the

one at trial, proof of the identity of the perpetrator of the separate crime is *essential*. That proof was present here.

2. The trial court correctly denied the appellant's motion to suppress evidence seized from the appellant's office files, and that evidence was properly admissible at trial. The contentions here are that there was no probable cause to issue a warrant, and, even if there were probable cause, the appellant's private papers were not seizable.

A. Probable Cause. The appellant contends the information relayed to the judge who issued the warrant was stale, was inaccurate, and was unsupported hearsay.

*Staleness*. An affidavit issued in support of the warrant application showed that there had not been a direct observation of the sought files since nine months earlier. Additional information presented to the issuing judge showed that the continued existence of these files had been circumstantially corroborated about ten days before the warrant was sought, and attached to the warrant application was a Medicaid agreement in which the appellant agreed to maintain the particular records being sought. Despite the substantial time lapse, we believe the type of crime and evidence involved prevents a staleness problem from arising in this case.

The question is one of reasonability: Is the lapse of time so long that it is no longer reasonable to believe that the same conditions described in the affidavit remain at the time a warrant is issued? *Fowler v. State,* 121 Ga. App. 22 (172 SE2d 447) (1970). In *State v. Boswell,* 131 Ga. App. 657, 659 (206 SE2d 682) (1974), this court referred to a collection of "staleness cases" in Annotation, 100 ALR2d 525, and noted, "The cases are unanimous in holding intervals of two months or more between the act and the affidavit to be impermissible." Though this statement was not the holding of *Boswell,* the appellant is apparently contending that lapses of more than two months are per se unreasonable. But nicely drawn time lines are simply inadequate to resolve staleness questions, for the ultimate question is whether, *under all the facts and circumstances of the particular case,* information about evidence is so fresh that there is probable cause to believe the evidence still exists in the same place, or is so stale that such a conclusion of probable cause is

unreasonable. An excellent perspective of this question is found in Andresen v. State, 24 Md. App. 128, 172 (331 A2d 78) (1975), where a warrant was issued to seize records from an attorney's file:

"The ultimate criterion in determining the degree of evaporation of probable cause, however, is not case law but reason. The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock: the character of the crime (chance encounter in the night or regenerating conspiracy?), of the criminal (nomadic or entrenched?), of the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), of the place to be searched (mere criminal forum of convenience or secure operational base?), etc. The observation of a half-smoked marijuana cigarette in an ashtray at a cocktail party may well be stale the day after the cleaning lady has been in; the observation of the burial of a corpse in a cellar may well not be stale three decades later. The hare and the tortoise do not disappear at the same rate of speed. The massive records and files of the appellant-attorney and his protean corporate extensions in this case are more akin to the latter than to the former."

We believe the appellant's files here are much the same as the attorney's files in Andresen; they are permanent in character and they are likely to be maintained in one place much longer than would be illicit drugs, stolen merchandise, or murder weapons. We do not believe the nine-month time lapse here prevented a proper determination that there was probable cause to believe the records would be found in the appellant's office.

*Inaccuracies.* The appellant contends that the affidavit contained such inaccuracies that its integrity was destroyed and the warrant therefore should be voided. *Miller v. State,* 126 Ga. App. 847 (191 SE2d 883) (1972). Our review of the alleged inaccuracies leads us to concur with the trial court's assessment of them as "slight inaccuracies and errors." The lengthy and detailed warrant application was substantially correct, and we do not find the minor inaccuracies to be so material as to destroy the integrity of the affidavit or the validity of the warrant.

*Hearsay.* The affidavit submitted with the warrant application contained averments of allegations relayed by (1) Gary Womack, a Medicaid official in the Georgia Department of Human Resources, (2) practicing dentists who comprised the Peer Review Committee of the Georgia Dental Association, (3) Gene Matthews, a special investigator working for the special prosecutor in this case, and (4) two named GBI agents. The appellant is incorrect in contending that the affidavit was defective because it failed affirmatively to support the basis of knowledge and veracity of these hearsay declarants, as provided by Aguilar v. Texas, 378 U. S. 108 (84 SC 1509, 12 LE2d 723) (1964) and its progeny. Where the hearsay comes from a confidential informant — as likely as not a member of the criminal community and frequently one who is providing information in order to escape prosecution himself — the Aguilar standards are readily applicable. E.g., *Love v. State,* 144 Ga. App. 728 (II. C.1.) (1978). But where the hearsay declarant is an identified interested citizen or, especially, an identified government official or police officer, the credibility is not as suspect and the analysis is not as stringent. People v. Glaubman, 485 P2d 711 (Colo. 1971); Walker v. State, 196 S2d 8 (Fla. 1967). In this case, the mere averments of who provided the information were enough to support a presumption of reliability, credibility, and accuracy (*McNeal v. State,* 133 Ga. App. 225(2) (211 SE2d 173) (1974); *Davis v. State,* 129 Ga. App. 158 (198 SE2d 913) (1973)), and the hearsay statements therefore may serve as the foundation for probable cause.

B. Private Papers. There is no merit in the appellant's contention that the Medicaid records were not seizable because they were his private papers. If private papers constitute merely "tangible evidence" of the commission of a crime, they are not seizable. § 3 (e) Searches and Seizures Act, Ga. L. 1966, pp. 567, 568 (Code Ann. § 27-303 (e)). But where the papers are the *instrumentalities* of the crime, they are properly seizable under § 3(a) of that Act. Code Ann. § 27-303(a). Here, the appellant was charged with making false claims for dental work not performed. The records seized were not just evidence of the claims; they were the instrumentalities of

the claims; in essence, they *were* the claims. Thus, they were seizable under the valid search warrant.

3. On separate cross examinations of two state witnesses, the appellant's attorney attempted to ask the witnesses whether they knew the state Medicaid program owed the appellant money. Both times these questions were objected to on grounds of irrelevancy and immateriality, and both times the objections were sustained. We think the evidence was relevant. The appellant was attempting to elicit testimony showing that the Medicaid program was fraught with administrative foul-ups, confusion, and billing inaccuracies, all of which would lead to an inference that the appellant had no intent to make claims for unperformed dental work, but had simply made mistakes in submitting valid claims. However, the inference is a weak one indeed, and the excluded evidence, if introduced, would have been dwarfed by substantial evidence showing a contrary intent. Hence, we conclude that under the test of *Johnson v. State,* 238 Ga. 59 (230 SE2d 869) (1976), it is highly probable that this error did not contribute to the judgment, for under the voluminous evidence and facts here it is nearly inconceivable that this minimally persuasive evidence could have changed the outcome. The error therefore was harmless and does not require a new trial.

4. The opinion testimony of Dr. Charles Lewis, a dentist and chairman of the Peer Review Committee, as to the comparative costs of two types of dental space maintainers, was clearly and demonstrably within his field of expertise. This testimony was properly admitted.

5. We find no merit in the enumeration regarding the appellant's oral challenge to the order of names on the jury list. Code § 59-803; *McGinnis v. State,* 135 Ga. App. 843 (1) (219 SE2d 485) (1975).

6. After an in camera review of the state's files, the court granted the appellant's motion for disclosure of any exculpatory or helpful information, but only as to some of the contents. The remaining documents were placed under seal and both parties have requested that this court review the sealed documents in order to determine the propriety of the trial court's refusal to order them

disclosed. We have, and we find that all of the documents are clearly inculpatory and not remotely exculpatory.

7. It was not error to admit certain experimental evidence. Several of the charges against the appellant dealt with alleged false claims for pulp caps and tooth restorations. Introduced into evidence were X-rays of the teeth of patients on whom these operations had purportedly been performed. A dental expert thereafter testified as to an experiment he had conducted to determine whether the particular types of pulp caps and tooth restorations would show up in X-rays. The results of these experiments were admissible within the sound discretion of the trial judge, and we find no abuse of that discretion here. *West v. State,* 200 Ga. 566(2) (37 SE2d 799) (1946).

8. Finally, there is no merit in the contention that the trial court erred in failing to charge on the effect of testimony concerning other related misconduct. First, we note that the trial court instructed the jury as to the limited purposes of such evidence before any such evidence was introduced. More importantly, at the conclusion of the charge to the jury no objections whatsoever were voiced to the charge.

*Judgment affirmed. Deen, P. J., and Banke, J., concur.*

ARGUED JANUARY 4, 1978 — DECIDED APRIL 5, 1978 — REHEARING DENIED APRIL 28, 1978 — CERT. APPLIED FOR.

*G. L. Dickens, Jr.,* for appellant.
*Joseph H. Briley, District Attorney, Arthur K. Bolton, Attorney General, J. Melvin England,* for appellee.