## 38313. DAVIS v. THE STATE.

GREGORY, Justice.

Following a jury trial, defendant Margaret Ernestine Davis was found guilty of the murder of Ray Silas Frady and was sentenced to life imprisonment. Defendant appeals from the denial of her motion for a new trial and from other alleged errors of law.

Davis was the 38-year-old owner/operator of the Davis Insulation Company in Dalton, Georgia, which she operated out of her home. She was legally separated from her husband as a result of domestic strife. Following her separation, she purchased a .38 revolver for protection, which she testified she carried loaded everywhere she went. She also testified that on one occasion, after she had an argument with her estranged husband, she used the gun to shoot the tires off his car. She further testified that she had pulled the gun on the deceased, Frady, in an earlier argument with him, and that Frady had to take the gun away from her.

The deceased was 35 years old, divorced, and on probation at the time of these incidents. There was some testimony that he had a violent reputation in the community. Frady and the defendant began dating in September 1980. Testimony revealed that their personal relationship was a turbulent one. In January 1981, the defendant hired Frady as an employee of the Davis Insulation Company.

On Sunday, February 1, 1981, the defendant had a party at her home which was attended by Frady and several others. Frady left the party at 9 o'clock that evening, ostensibly to go to the grocery store, taking one of the defendant's vans and the keys to the equipment to defendant's business. Frady had in fact left to spend the night with another woman. Later that night and early the next morning, the defendant unsuccessfully attempted to locate Frady to retrieve the keys to her business so that work could begin as usual at 8 o'clock Monday morning. When Frady did not arrive by 8 o'clock that morning, the defendant and her supervisor agreed to fire Frady when

he did arrive. Frady arrived at about 10 o'clock that morning.

The defendant asked Frady to come inside so that she would not have to fire him in front of the other employees. When she fired Frady, he became very angry and hit her several times. Frady left the room to collect his personal belongings and laundry from defendant's house and take them to his car. While Frady was in the yard, arguing with his former supervisor, the defendant got her loaded .38 revolver. Frady's sister, who was in the house with defendant at the time, would not let the defendant go out the front door with the loaded gun. The defendant then went outside through her carport door and came back around the house to where Frady and the supervisor were arguing. The defendant then intentionally shot Frady in the chest from a distance of about fifteen feet, fatally wounding him.

At trial, during redirect examination of a witness, the assistant district attorney approached the bench and brought up two points made by the witness which conflicted with statements that witness previously gave the police. The prosecutor subsequently stated in his place that he was surprised and entrapped by that testimony. Defense counsel objected to allowing the prosecutor to impeach his own witness, which objection was overruled. Defense counsel elicited from that witness on recross-examination that the witness had discussed this change of story with the assistant district attorney the day before this testimony. At this point, defense counsel moved for a mistrial because the prosecutor was allowed to impeach his own witness even though he could not have been surprised by the testimony, which motion was denied.

The evidence in this case is such that a rational trier of fact could reasonably have found proof beyond a reasonable doubt of Davis' guilt of all the elements of the crime of murder. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

1. Appellant urges in her first two enumerations of error that the trial court erred in admitting evidence of alleged prior similar transactions or crimes of appellant because it did not meet admission standards for such evidence and because it improperly placed her character into evidence. The evidence at issue was appellant's testimony on cross-examination about the two prior instances of using her .38 revolver, once on her former husband and once on the deceased Ray Frady.

If evidence is relevant and material to an issue in this case, it is not inadmissible because it incidentally puts the defendant's character in issue. *Whippler v. State,* 218 Ga. 198 (3) (126 SE2d 744) (1962), cert. denied, 375 U. S. 960 (1963); *Tiller v. State,* 196 Ga. 508 (3) (26 SE2d 883) (1943). This rule is true with respect to similar independent transactions or crimes of the defendant. While

unconnected crimes not tending to prove any element in the case are generally inadmissible and prejudicial as tending to place the defendant's character into evidence, proof of such crimes or transactions is admissible for purposes of proving issues such as malice, intent and motive. *Strickland v. State,* 137 Ga. App. 419 (2) (224 SE2d 87) (1976); *State v. Luke,* 232 Ga. 815 (209 SE2d 165) (1974); *King v. State,* 230 Ga. 581 (198 SE2d 305) (1973). In this case, proof of these prior incidents was directly relevant and material to the issue of defendant's intent and motive in the shooting, particularly in light of defendant's assertion of self-defense. At trial, the State took the position that appellant killed Frady because she was angry at him for seeing another woman the night before. Her conduct in her earlier relationship with Frady and her conduct in her prior relationship with her husband involving the use of her .38 revolver in anger were relevant to show motive and intent in this case. See, *Tiller v. State,* 196 Ga. 508, supra; *Brookins v. State,* 167 Ga. 325 (145 SE 449) (1928); *Jeffords v. State,* 162 Ga. 573 (134 SE 169) (1926).

The requirements for admissibility of evidence of independent similar transactions or crimes is set out in *Hamilton v. State,* 239 Ga. 72 (235 SE2d 515) (1977). "[B]efore evidence of independent crimes is admissible two conditions must be satisfied. First, there must be evidence that the defendant was in fact the perpetrator of the independent crime. Second, there must be sufficient similarity or connection between the independent crime and the offense charged, that proof of the former tends to prove the latter ... Once the identity of the accused as the perpetrator of the offense separate and distinct from the one for which he is on trial has been proven, testimony concerning the independent crime may be admitted for the purpose of showing identity, motive, plan, scheme, bent of mind, and course of conduct." *Hamilton,* supra, at 75.

The first condition is met in this case by appellant's own testimony that she engaged in the prior incidents involving use of her .38 revolver. The second condition requires that there be a "sufficient similarity" between the incidents so that proof of the prior transactions or crimes tends to prove an element of the crime for which defendant is on trial. *Hamilton,* supra, at 75. The three incidents involved here are sufficiently similar to meet this second condition of admissibility. In all three instances it appears that appellant either used or attempted to use her .38 revolver on the man with whom she had a close relationship because she was angry at that man. It was not necessary that the State prove every element of the commission of the prior independent crimes as a condition of admissibility. *Tuzman v. State,* 145 Ga. App. 761 (1) (244 SE2d 882)

(1978). Where, as here, the conditions of identity and sufficient similarity are met, the evidence is admissible.

2. Appellant next argues that the trial court's charge to the jury on the question of intent impermissibly shifted the burden of proof on that issue to the defendant, in violation of Sandstrom v. Montana, 442 U. S. 510 (99 SC 2450, 61 LE2d 39) (1979).

In Sandstrom, supra, the United States Supreme Court held that if one of the ultimate facts to be proven in a case was intent, an element of the crime charged, then proof of intent may not rest wholly or in part on a mandatory presumption. In *Williamson v. State,* 248 Ga. 47 (281 SE2d 512) (1981), this court reviewed the case law in that area and set forth guidelines for determining when a presumption is mandatory or unacceptably burden-shifting under Sandstrom, and when a presumption is permissive so as to comport with due process. A mandatory presumption is one which tells the trier of fact that "he or they must find the ultimate fact upon proof of the basic fact." *Williamson,* supra, at 54, citing Ulster County, New York v. Allen, 442 U. S. 140, 157 (99 SC 2213, 60 LE2d 777) (1979). A permissive presumption or inference, on the other hand, is one which "allows — but does not require — the trier of fact to infer the [ultimate] fact from proof by the prosecutor of the basic [fact]." *Williamson,* supra, at 54, citing Ulster County, New York, supra, at 157. The purpose of a permissive presumption or inference is to advise or guide "the jury as to what conclusions they may draw from the circumstantial evidence presented at trial." *Williamson,* supra, at 54.

To determine whether the trier of fact is required (i. e., a mandatory presumption) or merely permitted (i. e., a permissive presumption) to draw the presumption or inference in question, the language used in the jury charge must be examined. An examination of the jury charge on intent in this case shows that the trial judge properly placed the burden of proof on the State and that no mandatory presumption shifting that burden of proof appears. The following is the relevant portion of the charge to the jury, with the permissive language italicized:

"I charge you that every person is presumed to be of sound mind and discretion, but this *presumption may be rebutted.* I charge you that you *may infer* that the acts of a person of sound mind and discretion are the products of his will, and you *may infer* that a person of sound mind and discretion intends the natural and probable consequences of his act. Now, *whether or not you* [make] *any such inference is a matter solely within the discretion of you, the jury.* I charge you that intent is an essential element of any crime, and must be proved by the State beyond a reasonable doubt. I charge you that a person will not be presumed to act with criminal intent; but the trier

of the facts, and that is *you, the jury, may find such intention or the absence thereof* upon a consideration of words, conduct, demeanor, motive, and other circumstances connected with the act for which the accused is being prosecuted. I charge you that you *may infer* that a person of sound mind and discretion intends to accomplish the natural and probable consequences of his intentional acts; and if a person of sound mind and discretion, intentionally and without justification, uses a deadly weapon or instrumentality in the manner in which such weapon or instrumentality is normally used, and thereby causes the death of a human being, then you *may infer* the intent to kill." (T-279, 280)

As stated above, this jury charge on intent does not impermissibly shift the burden of proof on that issue to the defendant, in violation of Sandstrom v. Montana, 442 U. S. 510, supra. For that reason, this enumeration of error must fail.

3. In her final enumeration of error, appellant argues that the trial court erred in permitting the prosecution to plead entrapment and impeach the State's own witnesses because the prosecution knew in advance the witness' testimony would be in conflict with his prior statement to the police. This requires us to reanalyze what role the element of entrapment should play in Code Ann. § 38-1801, our rule against impeaching one's own witness.

Code Ann. § 38-1801 reads, in relevant part: "A party may not impeach a witness voluntarily called by him, except where he can show to the court that he has been entrapped by said witness by a previous contradictory statement . . ."

In *Wilson v. State,* 235 Ga. 470 (219 SE2d 756) (1975), this court closely examined the role of entrapment in our impeachment cases. We noted there that the earlier Georgia cases placed a gloss on the word "entrapment," requiring a show of both surprise and prejudice before impeachment could occur. *Wilson,* supra, at 472. We then reaffirmed our holding in *Wisdom v. State,* 234 Ga. 650 (217 SE2d 244) (1975), removing the requirement of a show of prejudice, allowing impeachment where the testimony was merely inconsistent with the prior written statement. We pointed out that the rationales underlying extraordinary circumstances before allowing one to impeach his own witnesses were no longer valid and that no good reason for the rule existed any longer. *Wilson,* supra, at 474-75. We concluded that justice was best served by a broad, liberal interpretation of § 38-1801, and held that ". . . for 'entrapment' under that Code Ann. § 38-1801 to exist, we will not require that the witness' testimony be a total 'surprise' nor that it be affirmatively damaging." *Wilson,* supra, at 475.

Our cases since *Wilson,* supra, have continued to require some

show of surprise for entrapment, although the cases show that we have been very liberal in finding surprise under almost all circumstances where there are prior inconsistent statements. See *Dixon v. State,* 243 Ga. 46 (3) (252 SE2d 431) (1979); *Ellenberg v. State,* 239 Ga. 309 (1) (236 SE2d 650 (1977); *Thomas v. State,* 239 Ga. 734 (3) (238 SE2d 888) (1977); *State v. Westberry,* 238 Ga. 648 (235 SE2d 140) (1977). Consistent with our rationale in *Wilson* and its progeny, we now remove the requirement of any show of surprise before a party is allowed to impeach his own witness. If, at the time of the questioning, a party has knowledge of a prior statement by one of his witnesses which contradicts testimony that witness has just given, that party has been sufficiently entrapped so that he may impeach his witness by use of the prior inconsistent statement.

Using this approach, the trial judge properly allowed the prosecutor to impeach his own witness because at the time of the questioning, the prosecutor had knowledge of a prior statement by that witness which contradicted testimony the witness had just given.

*Judgment affirmed. All the Justices concur, except with respect to Division 3, Hill, P. J., Smith and Weltner, JJ., concur in the judgment only.*

DECIDED APRIL 6, 1982 —
REHEARING DENIED APRIL 28, 1982.

*McDonald, McDonald & McDonald, E. Crawford McDonald, Mitchell, Mitchell, Coppedge, Boyett, Wester & Bates, Neil Wester,* for appellant.

*Stephen A. Williams, District Attorney, Michael J. Bowers, Attorney General, Mary Beth Westmoreland, Assistant Attorney General,* for appellee.

HILL, Presiding Justice, concurring specially.

I am unable to concur in Division 3 of the majority opinion. In that division, the majority hold: "If, at the time of the questioning, a party has knowledge of a prior statement by one of his witnesses which contradicts testimony that witness has just given, that party has been sufficiently entrapped so that he may impeach his witness by use of the prior inconsistent statement." That is to say, if a party has a prior inconsistent statement, that party has been entrapped and can impeach the witness.

In *Gibbons v. State,* 248 Ga. 858 (286 SE2d 717) (1982), we held that a prior inconsistent statement is admissible as substantive evidence when the maker of the statement takes the stand and is subject to cross-examination. The majority here do not acknowledge

*Gibbons.*

In *Ranger v. State,* 249 Ga. 315 (290 SE2d 63) (1982), post, decided contemporaneously with the case before us, we hold that Code § 38-1801 (which is applicable to impeachment) is not applicable where a witness' prior contradictory statement is introduced as substantive evidence pursuant to *Gibbons v. State,* supra. I would apply the rationale of *Ranger* here. I therefore concur in the judgment.