**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).**

**June 3, 2020**

# In the Court of Appeals of Georgia

A20A0439. THE STATE v. CARTEE et al.

GOBEIL, Judge.

In this case, the State appeals from an order of the Superior Court of Lumpkin County granting motions to suppress evidence from a search of Robert Cartee's and Tracey Diamond's residence. The State contends that the trial court erred in finding that there was not probable cause to support the search warrant issued by the magistrate judge. For the reasons explained more fully below, we affirm the trial court's order.

In a hearing on a motion to suppress, we defer to the trial court's credibility determinations and will not disturb its factual findings in the absence of clear error. *Gilbert v. State*, 245 Ga. App. 809, 810 (539 SE2d 506) (2000). Additionally, although we defer to the trial court's fact-finding, we owe no deference to the trial

court's legal conclusions. *Hughes v. State*, 296 Ga. 744, 750 (2) (770 SE2d 636) (2015). Instead, we independently apply the law to the facts as found by the trial court. Id.; see also *State v. Palmer*, 285 Ga. 75, 79 (673 SE2d 237) (2009).

Viewed in this light, the record shows that Investigator Shane Murphy of the Lumpkin County Sheriff's Office received an anonymous call reporting that there was a marijuana grow operation in the basement of Cartee's and Diamond's residence, located at 2585 Camp Wahsega Road. The anonymous tipster stated that there was a spray device at the front door of the residence that would mask the odor of marijuana if police were to investigate, and Cartee and Diamond rarely left the residence, as they were busy taking care of the grow operation. The tipster reported that the last time she had "actually physically seen the [marijuana] grow" was two years prior.

Based on the tip, Murphy drove by the residence at the reported address and confirmed that the house had a basement. Murphy then discovered that the property owner, Cartee, had a trash collection account with ARW trash service, and Murphy observed an ARW trash can located on the property. He coordinated with ARW to conduct a "trash pull" for the residence, where he would accompany the trash collectors and collect the trash himself for examination. On the day of the trash pull,

2

Murphy saw a trash can out on the street, touching the mailbox at 2585 Camp Wahsega Road, Cartee's and Diamond's residence. On cross-examination, Murphy conceded that he did not conduct any surveillance on the day of the trash pull, and could not specify when the trash can had been placed onto the street, who put the trash can out by the mailbox,[1] or who put any of the trash into the trash can. Murphy did not see any other trash cans out on that part of the street on the day of the trash pull.

Inside the trash can, Murphy found two large white bags, which contained 41 smaller grocery-sized Walmart bags full of marijuana clippings, stems, seeds, and leaves indicative of a marijuana grow operation. The marijuana clippings tested positive for THC. Murphy did not find any mail within the trash can containing any names or addresses that would identify to whom the trash belonged.

Murphy took the information from the anonymous tipster and the trash pull and completed a search warrant affidavit seeking to search Cartee's and Diamond's

---

[1] Notably, on Camp Wahsega Road, there are driveways used by more than one residence. Murphy testified that at least one neighbor of Cartee and Diamond utilized their driveway at 2585 Camp Wahsega Road to park a vehicle. Additionally, there are at least four other houses on the street near where the trash can was observed. Because the Cartee/Diamond residence has a long driveway, some of those neighboring houses are closer in proximity to the mailbox where the trash can was located than the Cartee/Diamond house.

3

residence. Specifically, concerning the trash pull, Murphy averred that the trash can containing the marijuana was "on the street next to the curb outside of [Cartee's and Diamond's] residence . . . touching the mailbox of 2585 [Camp Wahsega Road]." Murphy presented the search warrant application to a magistrate judge, and did not provide any additional testimony in support of the warrant. The search warrant issued, and officers searched the residence.

Officers discovered a marijuana grow operation in a secret room in the basement of the residence. There were marijuana plants, a dehydrator, and "finished product" located on racks. More marijuana plants and grow lights were found in another room. Walmart bags full of marijuana clippings, like the ones found during the trash pull, were discovered in the room with the dehydrator. Several firearms were also found and seized during the search.

Based on this evidence, Cartee and Diamond were indicted for trafficking in marijuana (Count 1), possession of marijuana with intent to distribute (Count 2), and possession of a firearm during the commission of a felony (Count 3). Diamond filed a motion to suppress, which as amended argued that the search warrant was not supported by probable cause. Cartee filed a similar motion to suppress.

The parties appeared at a hearing, at which Investigator Murphy testified to the facts as stated above. Notably, on cross-examination, Murphy explained that there was additional information provided by the tipster that he did not include in the search warrant affidavit. For example, the tipster told Murphy that the marijuana grow generated $30,000 in sales per month. Murphy stated that he did not include this and other unspecified information in the affidavit because he believed it to be unreliable or unnecessary to establish probable cause. Murphy also explained that no spray device as relayed by the tipster was found in the house, nor did he discover evidence corroborating the tipster's claim that Cartee and Diamond were making $30,000 per month in sales. Murphy testified that police found no money or transaction records at the residence.

Regarding his investigation after receiving the tip, Murphy testified that the tipster provided the name of "a daughter" who was involved in the marijuana grow operation, but he did not seek to contact the daughter to corroborate the tip. Murphy also testified that he did not conduct additional surveillance of the residence because he believed there were too many houses nearby. Thus, he never saw any foot or vehicle traffic that would have indicated a significant marijuana trafficking operation. Although the tipster did not provide a name, Murphy was able to use her telephone

number to determine the likely identity and residence of the tipster. Murphy ran the tipster's criminal history, and discovered that she had misdemeanor theft and traffic convictions.

From the bench, the trial court granted the motions to suppress. The trial court then issued a written order outlining its findings of fact and conclusions of law. At the outset, the trial court found that "upon hearing the testimony and examining the evidence presented[,] many of the facts stated in the [search warrant] affidavit were not credible[.]" Concerning the anonymous tip, the court found that it was not reliable based on: (1) the tipster's history involving crimes of moral turpitude; (2) the fact that this tipster had never before provided reliable information to the police; and (3) other information provided by the tipster that Murphy believed to be unreliable. Further, the court found that the tip was based on stale knowledge, as the tipster told Murphy that she had not been inside the house for two years. Finally, the court found that the information provided by the tipster was not independently corroborated by Murphy before seeking the search warrant, as Murphy did not attempt to contact others who would have had relevant information, conduct a controlled buy of marijuana from the residence, or conduct surveillance of the home.

Next, concerning the trash pull, the court found that it "did not provide probable cause because it did not have any corroborating factors." Important to the court was Murphy's testimony that, because he did not surveil the house before pulling the trash, he did not know when or by whom the trash can was placed onto the street, nor did he known whose trash was in the trash can – it could have been a neighbor's trash. Additionally, no trash containing Cartee's or Diamond's names or their address was found in the trash can, among the marijuana clippings or otherwise. The court conceded that a trash pull in some circumstances can add to or provide probable cause for a search warrant, but concluded that "grave concerns about the credibility of the eviden[c]e and testimony offered of this particular trash pull" rendered it insufficient to reach probable cause in this case.

Accordingly, based on the totality of the circumstances, and noting its responsibility to give great deference to the magistrate judge's decision to issue the search warrant, the court granted Cartee's and Diamond's motions to suppress evidence recovered during the search of their residence. This appeal followed.

On appeal, the State argues that the trial court erroneously concluded that the search warrant was not supported by probable cause. More specifically, the State argues that the anonymous tip, supported by and combined with the results of the

7

trash pull, provided sufficient evidence to support the search warrant. Under the totality of the facts in this case, we affirm the trial court's order.

In Georgia, a search warrant shall only issue upon facts sufficient to show probable cause that a crime is being committed or has been committed. OCGA § 17-5-21 (a).

> The magistrate's task in determining if probable cause exists to issue a search warrant is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Palmer*, 285 Ga. at 77 (citation omitted). The trial court then examines the issue as a first level of review, guided by the Fourth Amendment and "the principle that substantial deference must be accorded a magistrate's decision to issue a search warrant based on a finding of probable cause." Id. at 78 (citation omitted).

We then review the search warrant "to determine the existence of probable cause using the totality of the circumstances analysis[.]" *Palmer*, 285 Ga. at 78 (citation omitted). "The duty of the appellate courts is to determine if the magistrate

had a 'substantial basis' for concluding that probable cause existed to issue the search warrant." Id. (citation and punctuation omitted).

> In reviewing the trial court's grant or denial of a motion to suppress, we apply the well-established principles that the trial court's findings as to disputed facts will be upheld unless clearly erroneous and the trial court's application of the law to undisputed facts is subject to de novo review, keeping in mind that a magistrate's decision to issue a search warrant based on a finding of probable cause is entitled to substantial deference by a reviewing court.

Id. (citations and punctuation omitted).

When considering whether the magistrate had a substantial basis to find probable cause, we look at the circumstances as they existed when the search warrant was issued, and the fact that the defendants were ultimately found to have been engaging in criminal activity "is ultimately of no consequence for purposes of our analysis, which is grounded in the safeguards afforded by the Fourth Amendment." *Wiggins v. State*, 331 Ga. App. 447, 454 (771 SE2d 135) (2015) (physical precedent only); see also *Willis v. State*, 122 Ga. App. 455, 457 (177 SE2d 487) (1970) ("[I]f one is unlawfully searched, the fact that incriminatory matter is found on him will not render the search legal.").

Here, Investigator Murphy sought to establish probable cause for his search warrant by averring to the magistrate judge that (1) an anonymous tipster reported that Cartee and Diamond were cultivating marijuana in a secret room in their basement; (2) Murphy's observation of the residence confirmed that it did have a basement and the residence was not suitable for additional surveillance;[2] and (3) a trash pull from a trash can found at the curb next to the residence's mailbox resulted in the discovery of marijuana clippings, leaves, and other remnants consistent with a marijuana grow operation. However, after hearing Murphy's testimony, the trial court made the explicit finding that "many of the facts stated in the [search warrant] affidavit were not credible[.]" This credibility determination is not clearly erroneous, given that Murphy testified to facts that were omitted from the affidavit, including: (1) his lack of belief in the reliability of the tipster's report; and (2) his uncertainty about the origins of the trash recovered from the trash pull.

Thus, as the trial court determined that the "affidavit submitted contain[ed] material misrepresentations or omissions, . . . the omitted truthful material must be included, and the affidavit must be reexamined to determine whether probable cause

---

[2] Murphy testified that there were too many other houses nearby to conduct surveillance.

10

exists to issue a warrant." *Sullivan v. State*, 284 Ga. 358, 36 (2) (667 SE2d 32) (2008) (citation and punctuation omitted). After reexamining the affidavit in light of additional information that was omitted from the affidavit, we agree with the trial court that probable cause was not established. See *Herrera v. State*, 288 Ga. 231, 233 (1) (702 SE2d 854) (2010) (where search warrant affidavit omitted facts that were relevant to the credibility of other facts included in affidavit, we considered whether the omitted material would "eliminate the existence of probable cause").

Regarding the anonymous tip, an "uncorroborated telephone call from an anonymous tipster is not alone sufficient to base a finding of probable cause." *McRae v. State*, 204 Ga. App. 234, 235 (1) (418 SE2d 796) (1992). "We must determine, among other things, whether the hearsay information supplied to the affiant, coupled with the affiant's personal observations, presented a fair probability that contraband would be found at the suspect's residence." Id. (citation and punctuation omitted).

Here the record authorized the trial court's determination that the tipster's report was not sufficient for the magistrate judge to find probable cause, especially where Murphy admittedly had doubts about the reliability of some of the information provided by the tipster. As the trial court noted, Murphy did not surveil the house to determine if there were excessive visitors to support a thriving marijuana trafficking

11

operation or other suspicious activity, nor did he seek out the daughter mentioned by the tipster to ask about her participation in the marijuana grow. Additionally, Murphy provided no information as to the tipster's identity, how she was aware of the criminal activity, or what her motives for reporting the crime were. Thus, the anonymous tip did not show sufficient reliability to establish probable cause on its own. See *McRae*, 204 Ga. App. at 235 (1) (lack of information about an anonymous informant and the basis of the informant's knowledge relegated the information supplied to the status of mere rumor); *Lyons v. State*, 258 Ga. App. 9, 11 (1) (572 SE2d 632) (2002) (anonymous tip that drugs were seen in a home that also provided details showing that the tipster knew the suspect was not sufficient to prove the tipster's reliability without additional corroboration); *State v. LeJeune*, 276 Ga. 179, 181-182 (1) (576 SE2d 888) (2003) (in determining whether probable cause exists to issue a search warrant, a magistrate should consider all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of an anonymous tipster).

Further, information used to create probable cause to issue a warrant may become stale by the passage of time between when a condition was observed and when the search warrant is issued. *Tuzman v. State*, 145 Ga. App. 761, 764 (2) (A) (244 SE2d 882) (1978). "The question is one of reasonability: Is the lapse of time so

12

long that it is no longer reasonable to believe that the same conditions described in the affidavit remain at the time a warrant is issued?" Id. Here, where the affidavit stated that the tipster had witnessed the marijuana grow operation "within the past two years[,]" and Murphy clarified at the hearing that the tipster reported it had been at least two years since she had been inside the house, the trial court did not err in concluding that the information provided was stale, thus reaffirming the conclusion that the anonymous tip did not provide probable cause without additional supporting evidence. See *Eaton v. State*, 210 Ga. App. 273, 274 (1) (435 SE2d 756) (1993) (anonymous tips containing information that was one to three years old was considered so stale as to be unreliable for purposes of probable cause to support a search warrant).

Nevertheless, although the anonymous tip in this case did not support a finding of probable cause on its own, "this information cannot be viewed in a vacuum." *Copeland v. State*, 273 Ga. App. 850, 851 (1) (616 SE2d 189) (2005). Rather, the lower courts and this Court look to the "totality of the circumstances." Id.; see also *Eaton*, 210 Ga. App. at 274 (1) (police may undertake independent investigation to corroborate the details of an anonymous tip). The State contends that the trash pull

provided additional information that supported the probable cause finding under a totality of the circumstances.

However, in this case, Murphy testified that he conducted no surveillance before the trash pull, and was not sure how long the trash can had been out on the street, who put the trash can out onto the street, or who had actually put the Walmart bags full of marijuana clippings into the trash can. Additionally, the unique layout of Cartee's and Diamond's street further undermined confidence that the trash came specifically from Cartee, Diamond, or their residence, as (1) some of the driveways on Camp Wasega Road serve more than one residence, (2) at least one neighbor of Cartee's and Diamond's used their driveway to park a vehicle, (3) there are at least four other houses that were located closer to where the trash can was found than Cartee's and Diamond's house, and (4) the trash can examined by Murphy was the only one out on the street on the day of the trash pull, and it was unclear if neighbors might share the trash can. Finally, there was no identifying information found among the marijuana trash that would identify specifically from what person or address it originated. Under these facts as found by the trial court, it was reasonably possible that the marijuana trash came from another nearby person or address. Cf. *State v. Davis*, 288 Ga. App. 164, 165-166 (653 SE2d 311) (2007) (trash pull containing

14

small amounts of marijuana was sufficient to show probable cause to search suspect's residence, where documents containing suspect's name and address "linked the contents of the trash bag" to suspect, and recent dates on trash, combined with surveillance by police, served as evidence that the contents of the trash were recently in suspect's possession); *Conrad v. State*, 316 Ga. App. 146, 149-150 (1) (730 SE2d 7) (2012) (probable cause for search warrant was satisfied after police received two reports that defendant was recently selling drugs and police conducted at least three trash pulls at the residence, which all yielded narcotics and related paraphernalia); *Martinez-Vargas v. State*, 317 Ga. App. 232, 237 (730 SE2d 633) (2012) (probable cause for search warrant was satisfied by trash pull at residence yielding marijuana bud, combined with smell of raw marijuana coming from residence's garage), disapproved of on other grounds by *State v. Kazmierczak*, 331 Ga. App. 817, 822 (771 SE2d 473) (2015).

Thus, based on the combination of unique facts presented in this case, the trial court was authorized to conclude that the results of the trash pull conducted here did not create a sufficient nexus between the evidence discovered and Cartee's and Diamond's specific residence. See *State v. Brantley*, 264 Ga. App. 152, 154 (589 SE2d 716) (2003) (the State must establish a link between the evidence sought and

15

the specific address to be searched). And, given the deficiencies of the anonymous tip described above, the magistrate did not have a substantial basis for concluding that marijuana and items used for growing and distributing marijuana would be found at the residence. Thus, we affirm the trial court's order granting Cartee's and Diamond's motions to suppress.

*Judgment affirmed. Barnes, P. J., and Pipkin, J., concur.*