## 32302. ELLENBURG v. THE STATE.

HALL, Justice.

Appellant, George Ellenburg, was indicted for the murder of William A. Hopkins. Following jury trial he was found guilty and was sentenced to life imprisonment.

The evidence at trial revealed that Ellenburg shot and killed the victim with a .22 semi-automatic rifle at the residence of his sister, Mrs. Lorene Woods. When police arrived at the scene, shortly after the incident had occurred, they found the victim's body on the floor. A .22 bullet was found beneath the body and a similar bullet was found nearby on the floor. Also, an empty .22 shell was found near the front door and a closed pocketknife was found in the front pocket of the victim's trousers.

On the day following the incident, Steve Carter, an eyewitness to the shooting, gave a written statement to the police. The statement related that appellant was facing the victim, Hopkins, with a gun and said that Hopkins would die. Appellant pulled the trigger several times, but the gun did not fire. Hopkins was approaching appellant with his hand in his pocket when appellant pulled the trigger again and shot Hopkins. Appellant then asked his sister if Hopkins was dead. When she replied that he wasn't, appellant walked up to the victim and shot him.

Steve Carter is the son of appellant's sister, Lorene Woods. Because he was only thirteen years of age, the written statement was taken in the presence of his mother. Moreover, both the witness and his mother read the statement before it was signed and released to the investigating officer.

When questioned by the district attorney at trial, Carter said that the written statement was wrong. The witness then testified that Hopkins threw a crutch at Mrs. Woods and threatened to kill her. Hopkins then asked appellant if appellant was quicker than he was, and appellant shot Hopkins at once. According to Carter, Hopkins was reaching into his pocket at the moment he was shot. The witness furthermore denied that appellant shot the victim again.

After the witness gave the above testimony the

district attorney announced his intention to treat the witness as a hostile witness to the state. At that point the court retired the jury and the district attorney proceeded to question the witness based on the prior written statement that had been given to the police.

Appellant objected to this line of questioning on the ground that Code § 38-1801 prohibits a party from impeaching his own witness. Appellant further maintained that the district attorney had not been entrapped by the witness. In support of this assertion defense counsel stated that he had personally informed the district attorney that the witness would probably testify at trial to facts contradicting those given in the written statement to the police.

The trial court overruled appellant's objection and allowed the state to use the prior written statement to impeach the testimony of the witness in the presence of the jury. We affirm.

1. For entrapment under Code Ann. § 38-1801 to exist, it is not necessary that the witness' testimony be a total surprise nor that it be affirmatively damaging. *Wilson v. State,* 235 Ga. 470, 475 (219 SE2d 756) (1975). In *Wilson* the district attorney knew that the witness for the state was "backing up" and might not adhere to all of his earlier statements. However, the district attorney stated he had hoped that when the witness was put under oath he would make substantially the same statement. We held that this amounted to a showing of adequate surprise.

In the present case the witness, Carter, never repudiated his prior written statement to the police by notifying the state of his intention to give a different account of the facts in his trial testimony. The district attorney does not deny having knowledge that the witness had made other statements to defense counsel. Nor does he deny being aware of the possibility that the witness might testify to facts different from those in the prior written statement. Nevertheless, appellant does not contend that the state knew the nature of the alleged repudiation by the witness. Nor does appellant contend that the state knew the testimony of the witness would be incompatible with the witness' statement to the police. Appellant, therefore, fails to show that the state was

unreasonable in their belief that the witness would substantially adhere to his prior written statement when forced to testify under oath.

The state contends that they were reasonable in relying on the written statement made by the witness on the day of the shooting. Furthermore, at the time the statement was made the witness and his mother had ample opportunity to review the statement and determine its accuracy. Under these circumstances the state asserts that they had no choice but to put the witness on the stand and hope that he would testify to the facts given in his prior written statement.

Under the rationale of *Wilson,* supra, the facts of this case would support a finding that the state has shown *adequate surprise.* Moreover, appellant does not allege nor do the facts support any argument that the trial testimony did not adequately prejudice the state's case.

2. The state's use of the prior inconsistent statement of witness Carter was not error. It was used only for impeachment purposes. See *Wisdom v. State,* 234 Ga. 650, 655 (217 SE2d 244) (1975).

3. The trial court did not err in sustaining an objection by the district attorney to questions of witness Carter concerning statements made to defense counsel and others after the investigation which were asserted to be consistent with his trial testimony. *Popham v. State,* 138 Ga. App. 876 (227 SE2d 825) (1976).

4. We find no error in the trial court's failure to give, without request, a specific instruction qualifying the admission of the prior written statement of witness Carter and limiting it for impeachment purposes. See *Wisdom,* supra.

*Judgment affirmed. All the Justices concur.*

Submitted May 13, 1977 — Decided June 28, 1977.

*Frank Sutton,* for appellant.
*V. D. Stockton, District Attorney, Arthur K. Bolton, Attorney General, Susan V. Boleyn, Staff Assistant Attorney General,* for appellee.