William M. STEVENSON,
Petitioner-Appellant,

v.

Lanson NEWSOME, Warden,
Respondent-Appellee.

No. 84–8494.

United States Court of Appeals,
Eleventh Circuit.

Nov. 4, 1985.

James C. Bonner, Jr., Athens, Ga., for petitioner-appellant.

Paula K. Smith, Asst. Atty. Gen., Atlanta, Ga., for respondent-appellee.

Before HENDERSON and CLARK, Circuit Judges, and HOFFMAN *, District Judge.

HENDERSON, Circuit Judge:

William M. Stevenson was convicted of burglary in the Superior Court of DeKalb County, Georgia. After exhausting his state post-conviction remedies, he filed this petition for a writ of habeas corpus in the United States District Court for the Northern District of Georgia alleging ineffective assistance of counsel. The district court found no merit to his claims and denied the writ. He appeals that denial to this court. We affirm.

Stevenson and Michael W. Winters, Stevenson's brother-in-law, were jointly indicted on two counts of burglary. At the time of his arrest, Winters gave the police a statement that implicated Stevenson in the crimes. Winters' family retained William Dean, Jr. as Winters' attorney. Dean also represented Stevenson.[1]

On the day of the trial, the prosecutor informed the trial judge of a potential conflict of interest inherent in Dean's representation of both defendants because he had information indicating that Winters wanted to testify on behalf of the state. The state accordingly moved to sever the two defendants' cases over Dean's objections. The state trial court granted the motion. The court "suspended" Dean from representing Winters during the course of Stevenson's trial and appointed the public defender to advise Winters of the possible consequences of his testimony.

Stevenson's case was called for trial first. Winters took the stand and freely implicated himself in the burglaries but refused to incriminate Stevenson. The court subsequently allowed the prosecutor to impeach Winters' testimony with respect to Stevenson's involvement and permitted the introduction of Winters' prior statement implicating Stevenson through the testimony of a detective who had taken the statement. After the statement was read in court, Dean objected to its admission. Stevenson was subsequently convicted of both counts. Following Stevenson's trial,

* Honorable Walter E. Hoffman, U.S. District Judge for the Eastern District of Virginia, sitting by designation.

1. There is some dispute as to how Dean came to represent Stevenson. At the state habeas corpus hearing, Stevenson testified that the trial court appointed Dean to represent him on the day of trial. Transcript of State Habeas Corpus Hearing at 13–14. Dean stated, however, that he was retained to represent both men. Deposition of William Dean, Jr. at 5. In any event, Dean acted as Stevenson's attorney during his trial.

Dean represented Winters when he pled guilty to the burglaries.

After the denial of relief following a hearing in the state court, Stevenson filed this petition in the district court which was referred to the magistrate for a report and recommendation. 28 U.S.C. § 636(b)(1)(B) (1982). Stevenson claimed that he was denied his right to the effective assistance of counsel and to present a unified defense when the trial court granted the state's severance motion, that he was denied the effective assistance of counsel because of an actual conflict of interest, and that Dean was ineffective for failing to object to the impeachment of Winters' testimony. The magistrate recommended the denial of relief and the district court adopted his recommendation.

■■■ Stevenson's contention that he was denied effective assistance of counsel because the trial court interfered with the exercise of his rights to share counsel and to present a unified defense is essentially a challenge to the correctness of the trial court's decision to sever the trials. Under Georgia law, as well as federal law, the decision to grant or deny a motion for severance lies within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. *Cain v. State*, 235 Ga. 128, 128–129, 218 S.E.2d 856, 857 (1975); *Stevens v. State*, 165 Ga.App. 814, 816, 302 S.E.2d 724, 726 (1983). To justify habeas corpus relief, Stevenson has the burden of demonstrating that he suffered prejudice amounting to a denial of due process. *Demps v. Wainwright*, 666 F.2d 224, 227 (5th Cir. Unit B), *cert. denied*, 459 U.S. 844, 103 S.Ct. 98, 74 L.Ed.2d 89 (1982).[2]

■■■ There has been no such showing in this case. We recognize that "[a] common defense often gives strength against a common attack." *Glasser v. United States*, 315 U.S. 60, 92, 62 S.Ct. 457, 475, 86 L.Ed. 680, 710–11 (1942) (Frankfurter, J., dissenting). There is no constitutional right, however, to a joint trial. Even had the defendants been tried together, Steven-

son had no assurance that Winters would not testify against him. Furthermore, the state trial court was not bound by the strict requirements of Fed.R.Crim.P. 44(c) which provides that whenever two or more criminal defendants who have been jointly charged are represented by the same counsel, the court "shall promptly inquire with respect to such joint representation and shall personally advise each defendant of his right to the effective assistance of counsel, including separate representation." The state trial court, when advised of the potential conflict, acted to protect each defendant's interests by granting the state's severance motion. Stevenson has not demonstrated that the court abused its discretion.

Stevenson next attacks Dean's purported conflict of interest. The magistrate's report and recommendation to the court concluded that there was no actual conflict because Winters' testimony did not implicate Stevenson, Dean labored under no impediment in cross-examining Winters, and Dean had no reason to impeach Winters since his testimony did not damage Stevenson's case. Stevenson argues that this finding was erroneous because the trial court only temporarily suspended Dean from representing Winters, instead of disqualifying him from further participation. Thus, he says Dean owed a continuing duty of loyalty to Winters.

■■■ The threshold question is whether there was an actual conflict of interest. The possibility of conflict does not rise to the level of a sixth amendment violation. *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333, 347 (1980). "An actual conflict exists if counsel's introduction of probative evidence or plausible arguments that would significantly benefit one defendant would damage the defense of another defendant whom the same counsel is representing." *Baty v. Balkcom*, 661 F.2d 391, 395 (5th Cir. Unit B 1981), *cert. denied*, 456 U.S. 1011, 102 S.Ct. 2307, 73 L.Ed.2d 1308 (1982). It must be demon-

---

**2.** In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982), the Eleventh Circuit

Court of Appeals adopted as precedent all decisions of Unit B of the former Fifth Circuit.

strated that "the attorney 'made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other. If he did not make such a choice, the conflict remained hypothetical.' " *United States v. Mers*, 701 F.2d 1321, 1328 (11th Cir.) (quoting Comment, *Conflict of Interests in Multiple Representation of Criminal Co-Defendants*, 68 J.Crim.L. & Criminology 226, 232 (1977)), *cert. denied,* —— U.S. ——, 104 S.Ct. 481, 482, 78 L.Ed.2d 679 (1983).

■ There is no evidence in this case that Dean was subject to divided loyalties sufficient to establish an actual conflict of interest. Upon being informed of the potential conflict, the state trial court severed the trials and suspended Dean from representing Winters during the course of Stevenson's trial. The court also refused to allow Winters to discuss with Dean his testimony against Stevenson. Furthermore, Stevenson has not proved that Dean was forced to make choices that would benefit one defendant at the other's expense.

■ Even assuming that there was an actual conflict of interest, there is still no infringement of Stevenson's sixth amendment rights. The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) has cast considerable doubt upon the correctness of the holding in *Baty v. Balkcom* that a petitioner need not demonstrate that the conflict had an adverse effect on counsel's performance to establish a sixth amendment violation. *See Ruffin v. Kemp*, 767 F.2d 748, 751 & n. 6 (11th Cir.1985). *Compare Burger v. Kemp*, 753 F.2d 930, 942 (11th Cir.1985) (Johnson, J., dissenting) (defendant must show that counsel actively represented conflicting interests and that actual conflict adversely affected counsel's performance) *with Baty v. Balkcom*, 661 F.2d at 397 (Johnson, J.) (adverse effect on counsel's representation need not be shown). In *Strickland,* the Court said

One type of actual ineffectiveness claim warrants a similar, though more limited presumption of prejudice. In *Cuyler v. Sullivan*, ... the Court held that prejudice is presumed when counsel is burdened by an actual conflict of interest. In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts, see, e.g., Fed.Rule Crim.Proc. 44(c), it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest. Even so, the rule is not quite the per se rule of prejudice that exists for the Sixth Amendment claims mentioned above. Prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and 'that *an actual conflict of interest adversely affected his lawyer's performance.'*

466 U.S. at ——, 104 S.Ct. at 2067, 80 L.Ed.2d at 696–97 (emphasis added) (quoting *Cuyler v. Sullivan,* 446 U.S. 348, at 350, 100 S.Ct. 1718, at 1719, 64 L.Ed.2d 346, at 347). In order to warrant habeas corpus relief, the petitioner has to show not only an actual conflict of interest but also that the conflict adversely affected his lawyer's representation. Winters' trial testimony did not implicate Stevenson in the burglaries. In such circumstances, as the magistrate correctly pointed out, there was no reason for Dean to impeach Winters. On cross-examination, Dean attempted to show that Winters' prior inculpatory statement was a product of promises made to him by the detective and not Winters' own free will. Stevenson points to no different defense strategy which could have been employed by another lawyer. We hold that Stevenson has not shown an adverse effect in this case.

Finally, Stevenson claims that Dean was ineffective because he failed to object to the state's introduction of Winters' prior

statement to the police. Without concluding whether Dean was ineffective for failing to object, the magistrate found that there was no prejudice because even if Dean had objected to the state's impeachment of Winters, its own witness, this objection would have been properly overruled under Georgia law.

■■■■■ To prevail on this ground, Stevenson must prove that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. at ——, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. It must be shown that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The acts or omissions forming the basis for the ineffectiveness claim must be outside the "wide range of professionally competent assistance." *Id.* at ——, 104 S.Ct. at 2066, 80 L.Ed.2d at 695.

■■■■ Dean testified that he decided not to object to the state's cross-examination of Winters concerning his prior statement because he thought his client's best interests would be served by showing that the police used undue pressure in obtaining the statement. Deposition of William Dean, Jr. at 10–11. Dean also thought the testimony was harmless to Stevenson and more damaging to the state's case. *Id.* at 11–12. The prosecutor was of the same view. Deposition of Robert E. Wilson at 17–19. Stevenson urges that even if Dean made a proper tactical decision not to object to Winters' testimony, he had no basis for failing to object to introduction of the statement through the testimony of the detective. The record reveals that Dean did object to the admission of the statement on voluntariness grounds. Transcript of State Habeas Corpus Hearing at 88. In light of all the circumstances, we cannot say that counsel's conduct was constitutionally deficient in this instance.

■■■■ Even assuming that Dean was ineffective by failing to object, the magistrate correctly found that Stevenson failed to establish the requisite prejudice. Georgia law provides that:

A party may not impeach a witness voluntarily called by him, except where he can show to the court that he has been entrapped by said witness by a previous contradictory statement.

O.C.G.A. § 24–9–81 (1982). To establish entrapment, it is not necessary that the witness' testimony be a total surprise or that it be affirmatively damaging. *Ellenburg v. State*, 239 Ga. 309, 310, 236 S.E.2d 650, 651 (1977); *Wilson v. State*, 235 Ga. 470, 475, 219 S.E.2d 756, 760 (1975). Indeed, it is not error for the trial court to allow the state to impeach its own witness by introducing prior inconsistent statements where the witness' testimony merely fails to bolster the state's case as anticipated by the prosecution. *Wilson*, 235 Ga. at 473–75, 219 S.E.2d at 759–60. If the state reasonably believes that the witness will testify consistently with his prior statement, it is entitled to impeach the witness with the prior statement if he fails to adhere to it at the trial. *Ellenburg*, 239 Ga. at 310–11, 236 S.E.2d at 651–52.

■■■■ The prosecutor testified that he assumed when Winters volunteered to testify that he would do so consistently with his prior statement. Deposition of Robert E. Wilson at 10–11, 15. When Winters later refused to incriminate Stevenson as he had previously told the detective, the prosecutor was entitled to impeach Winters with his prior statement. Therefore, any objection to admission of the statement would have been without merit.

For the foregoing reasons, the judgment of the district court denying Stevenson's petition for habeas corpus is AFFIRMED.

CLARK, Circuit Judge, dissenting:

I respectfully dissent from the majority opinion because Stevenson's attorney, William Dean, Jr., was operating under an actual conflict of interest that adversely affected his representation of Stevenson and thus infringed upon Stevenson's Sixth Amendment rights.

## I.

Although the majority correctly recognizes that the threshold question is whether there was an actual conflict of interest, it has incorrectly concluded that there is no evidence that Dean was subject to divided loyalties sufficient to establish an actual conflict of interest.

The critical issue in this case is whether a temporary suspension can eliminate an actual conflict of interest. If Dean had continued to represent Winters and Stevenson, there would be no doubt that Dean was operating under an actual conflict of interest. Similarly, had Dean been removed from Winters' case entirely there would be no argument that the conflict of interest was adequately eliminated. However, the trial court in this case merely suspended Dean. By only *suspending* Dean from representing Winters for the duration of Stevenson's trial, the trial court created a situation that was extremely conducive to conflicting loyalties and duties.

The existence of an actual conflict is demonstrated by Dean's testimony at the habeas hearing and his conduct at trial. Dean testified that while Winters was on the stand he fully expected to continue to represent him. It is apparent from this testimony that when Dean made the tactical decision to cross-examine Winters, he realized that he would be representing Winters in the future. Dean did in fact subsequently represent Winters at Winters' trial.

Dean's testimony demonstrates that the actual conflict of interest was not eliminated when the trial court merely suspended Dean. Dean was considering his future representation of Winters while he was representing Stevenson and while Winters was on the witness stand. Had Dean been forbidden from representing Winters further, it is probable that Dean's thoughts would have been focused entirely on Stevenson's defense.

As a reviewing court, we cannot be certain that Dean's zeal, judgment or general trial conduct was not affected by this conflict. As the former Fifth Circuit observed in *Castillo v. Estelle:*

When there is a conflict of interest such as exists in this case, the prejudice may be subtle, even unconscious. It may elude detection on review. A reviewing court deals with a cold record, capable, perhaps, of exposing gross instances of incompetence but often giving no clue to the erosion of zeal which may ensue from divided loyalty.

*Castillo v. Estelle,* 504 F.2d 1243, 1245 (5th Cir.1974).

I also disagree with the majority's conclusion that Dean was not forced to make choices that would benefit one defendant at the expense of the other.

In *Barham v. United States,* 724 F.2d 1529 (11th Cir.1984) we observed that:

"If a defense attorney owes duties to a party whose interests are adverse to those of the defendant, then an actual conflict exists. The interests of the other client and the defendant are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to his other client."

*Id.* at 1535 (quoting *Zuck v. Alabama,* 588 F.2d 436, 439 (5th Cir.1979), *cert. denied,* 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979)). We conclude that the attorney had "conflicting duties to his two clients and this conflict became actual when he was required to cross-examine [his client]." *Id.*

It was in Winters' best interest to be cross-examined about the voluntariness of the purported statement given to the investigator. Such an examination could have begun to establish the theory that the statement made by Winters was involuntary and thus should not be admitted at Winters' trial. On the other hand, if Dean had not been burdened with conflicting loyalties, he might have been able to recognize that he owed a duty to Stevenson *not* to cross-examine Winters about the purported statement. Such a tactic could have prevented further discussion about the statement and additional questioning by the prosecutor. This would have been an effective tactic because Dean could have attempted to prevent the investigator from

reading the statement to the jury which would have eliminated the jury's consideration of the statement during its deliberations. For these reasons it is plausible that Dean owed a duty to Winters to cross-examine him and attempt to shed light upon the involuntariness of the statement; yet, he also owed a duty to Stevenson to forego any cross-examination of Winters or to cross-examine to bolster the statement. Thus, the existence of conflicting duties was sufficient to create an actual conflict. *See Castillo v. Estelle*, 504 F.2d 1243, 1245 (5th Cir.1974) (Attorney's representation of the defendant and a principal witness for the defense in an unrelated civil suit created a conflict of interest and was "so inherently conducive to divided loyalties as to amount to a denial of the right to effective representation essential to a fair trial.").

## II.

The majority has also properly recognized that a petitioner must prove that an actual conflict of interest adversely affected his lawyer's representation. However, it has erred in its assumption that even if an actual conflict existed, there was no infringement of Stevenson's Sixth Amendment rights because he did not show an adverse effect in this case. In my view, the failure of Dean to object to the state's impeachment of its own witness (Winters) not only illustrated that an actual conflict existed but adversely affected Stevenson.

Furthermore, the majority errs when it assumes that Dean was ineffective by failing to object, and concludes that the magistrate nevertheless was correct when it found that Stevenson failed to establish the requisite prejudice.[1] The majority reasons that it was not error to allow the state to impeach Winters under Ga.Code Ann. § 24–9–81 (1981) because the state reasonably believed that Winters would testify consistently with his prior statement. Moreover, the majority explains that any

objection to the admission of the statement would have been without merit.

The majority, however, fails to mention Ga.Code Ann. § 24–3–52 (1982) [hereinafter cited as § 24–3–52] which provides that "[t]he confession of one joint offender or conspirator made after the enterprise is ended shall be admissible only against himself." Clearly, case law interpreting § 24–3–52 demonstrates that Stevenson was prejudiced both by Dean's failure to object to the introduction and admission of the statement on the basis of § 24–3–52 and by his failure to seek a mistrial or a curative instruction once the statement was admitted into evidence. *See, e.g., Dudley v. State*, 148 Ga.App. 560, 251 S.E.2d 815 (Ga.Ct.App.1978); *see also* cases cited *infra*.

The statute protects a defendant from a co-conspirator's declarations "made after the criminal enterprise has ended [by providing that the declarations] are evidence only against the one making them." *Banks v. State*, 113 Ga.App. 661, 149 S.E.2d 415 (Ga.Ct.App.1966). In this case, Dean could have persuasively argued that the criminal enterprise had ended when Winters gave the statement to the agent at the police station. *See Price v. State*, 239 Ga. 439, 238 S.E.2d 24, 25 (Ga.1977) (statute "prevented admission into evidence of a co-defendant's statement, through a police officer-witness because the statement, which was clearly in the nature of a confession, was made after all three suspects had been arrested and identified.").

Moreover, the fact that Winters was sworn as a witness and testified would not have prevented the application of § 24–3–52 because Winters did not adopt the statement as his testimony and did not implicate Stevenson while he was on the stand. *Compare Oliver v. State*, 159 Ga.App. 154, 282 S.E.2d 767, 769 (Ga.Ct.App.1981) (The provisions of the statute "have no application where the joint offender or conspirator

---

1. As the majority correctly points out, under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) to prevail on a claim of actual ineffectiveness, it must be shown "that counsel 'actively represented con-

flicting interests' and 'that an actual conflict of interest adversely affected his lawyer's performance.'" 466 U.S. at ——, 104 S.Ct. at 2067, 80 L.Ed.2d at 696–97.

is sworn and testifies as a witness.") *with Rhodes v. State,* 135 Ga.App. 484, 218 S.E.2d 159, 160 (Ga.Ct.App.1975) (Court held that the failure to instruct the jury with regard to the statute "was harmless error where the codefendant was sworn as a witness and *testified to the same facts as those contained in his statement." Oliver v. State, supra,* 282 S.E.2d at 769.); *see also Pippin v. State,* 205 Ga. 316, 53 S.E.2d 482, 489 (1949) (statute does not apply where witness testifies on behalf of state and no confession is offered or admitted).

*Dudley v. State,* 148 Ga.App. 560, 251 S.E.2d 815 (Ga.Ct.App.1978) illustrates that contrary to the majority's conclusion that an objection to the admission of the statement would have been without merit, Dean's failure to object on the grounds of § 24–3–52 clearly prejudiced Stevenson. For example, in *Dudley,* the defendant was convicted principally on the testimony of an accomplice who had previously been tried and sentenced. A sheriff subsequently testified about a prior statement made by the accomplice. The sheriff answered affirmatively to the following questions: "Did ... [the accomplice] ever make a statement to you? ... Was it what he testified to here today?" *Id.* at 817. Defense counsel objected and moved for a mistrial "contending it was an attempt to use the confession of the co-conspirator at a time after the conspiracy had ended at a trial where the co-conspirator [was] not on trial contrary to the law of Georgia...." *Id.* The Georgia Court of Appeals observed that the statement was violative of the statute *and prejudicial to the defendant.* The court concluded that "[u]nless stricken from the record and the defect in some way cured, the motion for mistrial should have been granted." *Id. Dudley* illustrates that situations such as the instant case, are extremely prejudicial to a defendant. *Dudley* also supports the conclusion that Dean should have objected *before* the statement was read to the jury.

**2.** Although the petitioner in *Douglas* raised a different claim, *Douglas,* nevertheless supports the conclusion that Stevenson was adversely af-

This case is also similar to *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965).[2] In *Douglas,* a co-defendant was called to testify in the petitioner's trial but, invoking the privilege against self-incrimination, refused to answer any questions concerning the alleged crime. Under the guise of cross-examination, a document, said to be the co-defendant's signed confession, was read to the jury. Each time the co-defendant was asked if he made the statement in the document, he refused to answer. The Supreme Court held:

> The alleged statements clearly bore on a fundamental part of the State's case against petitioner. The circumstances are therefore such that "inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, *and thus unfairly prejudiced the defendant."*

380 U.S. at 420, 85 S.Ct. at 1077 (emphasis added).

Although the prosecutor in this case did not introduce the statement through Winters, his actions had the same effect. Winters, like the co-defendant in *Douglas,* refused to testify about Stevenson's involvement in the crime. The prosecutor, like the attorney in *Douglas,* nevertheless managed to introduce the damaging statement through the guise of impeaching Winters. Clearly, Winters' statement was a fundamental component of the state's case against Stevenson. The statement provided:

> We drove up to 2664 Columbia Drive and knocked on the door. No one was home. So I kicked the door in and me and Billy went inside and took the stuff out. We then went to the house next door and Billy knocked the window out and we went inside and took out some more stuff. We loaded all the stuff in my truck and left. Billy is William Stevenson.

fected by Dean's performance due to the existence of an actual conflict of interest.

Investigator Newsome is writing this statement for me at my request.

Moreover, the fact that Winters testified that he committed the burglary contributed to the prejudicial impact of the statement for in the minds of the jury, the statement could have been an "eyewitness'" account of the crime. Dean's objection came *after* the statement was read and only related to the voluntariness of the statement. This action alone demonstrates that the conflict adversely affected Dean's representation of Stevenson.

As in *Cuyler*, the "evidence of counsel's 'struggle to serve two masters [cannot] seriously be doubted.'" *Cuyler v. Sullivan*, 446 U.S. 335, 349, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). Since counsel was burdened with an actual conflict of interest that adversely affected his performance and therefore impaired Stevenson's defense, I would reverse the decision of the district court and remand the case to the district court with instructions to issue the writ of habeas corpus.